IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

LARRY W. MERRILL,         )

                               )

     Plaintiff-Appellant,       )     CA No. 22-35731

                               )

       v.                    )

                               )     D.C. No. 6:20-cv-00984-MK

LANE FIRE AUTHORITY, TERRY   )     U.S. District Court for Oregon,

NEY, STOELK INVESTIGATION    )     Eugene

AND CONSULTATION, LLC, an    )

Oregon Limited Liability Company,   )

and D. CRAIG STOELK,          )

                               )

     Defendants-Appellees.     )

_____

## DEFENDANTS-APPELLEES LANE FIRE AUTHORITY AND TERRY NEY'S ANSWERING BRIEF

On Appeal from the United States District Court
For the District of Oregon, Eugene, Honorable Magistrate Judge Mustafa Kasubhai
and Honorable Michael J. McShane

Janet M. Schroer, OSB No. 813645
Ruth A. Casby, OSB No. 944225
HART WAGNER LLP
1000 SW Broadway, 20th Floor
Portland, OR  97205
503-222-4499
jms@hartwagner.com
rac@hartwagner.com

Of Attorneys for Defendants-Appellees Lane Fire Authority
and Terry Ney

**MARCH 2023**

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................1

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES...........................................................2

RULE 28-2.7 STATEMENT .................................................................2

STATEMENT OF THE CASE...............................................................2

I.    Nature of the Case ........................................................................2

II.    Undisputed Facts. .........................................................................4

    A.   The Initiating Complaint. ........................................................4

    B.   Plaintiff Notified of Workplace Sexual Harassment Investigation. ...............5

    C.   Stoelk's Investigation and Findings. .......................................5

    D.   Notice of Investigation Results and Pre-disciplinary Meeting.......................9

    E.   Pre-disciplinary Meeting and Notice of Termination..................................10

    F.   Post-disciplinary Grievance Process .......................................11

    G.   Post-termination Administrative Hearings ...................................11

III.    Procedural History.......................................................................12

SUMMARY OF ARGUMENT .............................................................16

ARGUMENT .......................................................................................18

I.    Standard of Review. .....................................................................18

II.     Plaintiff's Wrongful Termination and Deprivation of Rights Claims Fail as a Matter of Law. ...................................................................................19

   A.   Standards for Constitutionally Required Due Process. ...................................19

   B.   The Evidence Establishes Sufficient Due Process. ......................................21

      1.   Sufficient Notice and Meaningful Opportunity to be Heard.......................22

      2.   A Fair and Impartial Investigation. ............................................................27

      3.   No Evidence of a Biased Decisionmaker.....................................................30

   C.   Based on the Foregoing Evidence, Plaintiff's Section 1982 Deprivation of Rights Claim against Chief Ney Also Fails....................................................32

   D.   In Any Event, Chief Ney is Entitled to Qualified Immunity. .......................33

III.    Plaintiff's Defamation Claim is Time-barred as a Matter Of Law. ..............35

   A.   Plaintiff's Claim is Time-Barred. .................................................................36

   B.   Privilege Immunity Applies...........................................................................39

   C.   Plaintiff's Claim Fails as a Matter of Law Because the Purported Defamatory Statement is Not False. ..............................................................42

IV.    The Magistrate's Discovery Ruling is Not Reviewable and, In Any Event, Does Not Support Reversal ...........................................................................43

   A.   Plaintiff's Claim of Error is Waived ............................................................43

   B.   The Discovery Order Correctly Denied Disclosure of Attorney-Client Confidential Communications........................................................................44

   C.   No Reversible Error is Demonstrated.............................................................53

CONCLUSION ....................................................................................................53

## TABLE OF AUTHORITIES

### CASES

*Acosta-Huerta v. Estelle*,
   7 F.3d 139 (9th Cir. 1992) ...................................................................33

*Admiral Ins. Co. v. U.S. District Court*,
   881 F.2d 1486 (9th Cir. 1989) ..............................................................45

*Agster v. Maricopa County*,
   422 F.3d 836 (9th Cir. 2005) ................................................................45

*Amy's Kitchen, Inc. v. Stukel Mountain Organics LLC*,
   2016 WL 9406695 (D. Or., September 28, 2016)..................................52

*Armstrong v. Meyers*,
   964 F.2d 948 (9th Cir. 1992) ................................................................26

*Ashcroft v. al-Kidd*,
   563 U.S. 731, 131 S.Ct. 2074 (2011) ............................................ 33, 34

*Bank of Oregon v. Indep. News, Inc.*,
   298 Or. 434, 693 P.2d 35 (1985)...........................................................42

*Board of Regents of State Colls. v. Roth*,
   408 U.S. 564, 92 S.Ct. 2701 (1972) ......................................................20

*Brown v. Gatti*,
   341 Or. 452, 145 P.3d 130 (2006).........................................................36

*Butcher's Union Local No. 498 v. SDC Inv. Inc.*,
   788 F.2d 535 (9th Cir. 1986). ...............................................................53

*Carey v. Piphus*,
   435 U.S. 247, 98 S.Ct. 1042 (1978) ......................................................19

*Chevron Corp. v. Pennzoil Co.*,
   974 F.2d 1156 (9th Cir. 1992) ..............................................................50

*Clements v. Airport Auth. Of Washoe Cty.*,
69 F3d 321 (9th Cir. 1995) ........................................................20

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ........................................................ 20, 21, 29

*Cmty. House, Inc. v. City of Boise, Idaho*,
623 F.3d 945 (9th Cir. 2010) ....................................................33

*DeLong v. Yu Enterprises, Inc.*,
334 Or. 166, 47 P.3d 8 (2002). ........................................... 39, 40

*Eberle v. City of Anaheim*,
901 F.2d 814 (9th Cir. 1990) ....................................................32

*Gilbert v. Homar*,
520 U.S. 924, 117 S.Ct. 1807 (1977) .......................................21

*Glenbrook Homeowners Ass'n v. Tahoe Reg'l Planning Agency*,
425 F.3d 611 (9th Cir. 1996) ....................................................44

*Grubb v. Johnson et. al.*,
205 Or. 624, 289 P.2d 1067 (1955) ...........................................39

*Guatay Christian Fellowship v. Cnty. of San Diego*,
670 F.3d 957 (9th Cir. 2011) ....................................................19

*Hallett v. Morgan*,
296 F.3d 732 (9th Cir. 2002) .......................................... 18, 44

*Hamby v. Hammond*,
821 F.3d 1085 (9th Cir. 2016) ..................................................35

*Hunter v. Bryant*,
502 U.S. 224, 112 S.Ct. 534 (1991) ..........................................33

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ....................................................25

*In re Qwest Commc'ns Int'l Inc.*,
    450 F.3d 1179 (10th Cir. 2006) ...................................................49

*Johnson v. Brown*,
    193 Or App 375, 91 P.3d 741, *aff'd on reconsideration*,
    95 P.3d 235 (2004) ........................................................... 39, 40

*Kennedy v. Allied Mut. Ins. Co.*,
    952 F.2d 262 (9th Cir. 1991) .................................................29

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,
    832 F.3d 1024 (9th Cir. 2016) ....................................... 36, 37, 38

*Lewis v. Carson Oil Co.*,
    204 Or. App. 99, 127 P.3d 1207 (2006) ...................................41

*Liteky v. United States*,
    510 U.S. 540, 114 S.Ct. 1147 (1994) .......................................31

*Martel v. County of Los Angele*,
    56 F.3d 993 (9th Cir. 1995) ...................................................53

*Mathews v. Eldridge*,
    424 U.S. 319, 96 S.Ct. 893 (1976) ..........................................20

*Mattenson v. Baxter Healthcare Corp.*,
    438 F.3d 763 (7th Cir. 2006) .................................................52

*Moore v. King Cty. Fire Prot. Dist. No. 26*,
    327 F. App'x 5 (9th Cir. 2009) ...............................................25

*Morrissey v. Brewer*,
    408 U.S. 471, 92 S.Ct. 2593 (1972) .................................. 20, 35

*Nat'l Union Fire Ins. Co. v. Starplex Corp.*,
    220 Or. App. 560, 188 P.3d 332, *rev den*, 345 Or. 317 (2008)............36

*Parneros v. Barnes & Noble, Inc.*,
    332 F.R.D. 482 (S.D.N.Y. 2019) ............................................48

*Shanks v. Dressel*,
   540 F.3d 1082 (9th Cir. 2008) ..............................................................19

*Simpson v. Lear Astronics Corp.*,
   77 F.3d 1170 (9th Cir. 1996) ...............................................................44

*Sorrels v. McKee*,
   290 F.3d 965 (9th Cir. 2002) ...............................................................34

*Strivers v. Pierce*,
   71 F.3d 732 (9th Cir.1995) ..................................................................31

*Tennenbaum v. Deloitte & Touche*,
   77 F.3d 337 (9th Cir. 1996) .................................................................47

*Toguchi v. Chung*,
   391 F.3d 1051 (9th Cir. 2004) ..............................................................18

*Tubra v. Cooke*,
   233 Or. App. 339, 225 P.3d 862 (2010) ...............................................41

*United States v. Chen*,
   99 F.3d 1495 (9th Cir. 1996) ...............................................................46

*United States v. Graff*,
   610 F.3d 1148 (9th Cir. 2010) ..............................................................19

*United States v. Kimble*,
   107 F.3d 712 (9th Cir. 1997) ........................................................ 33, 34

*United States v. Richey*,
   632 F.3d 559 (9th Cir. 2011) .................................................. 19, 45, 52

*United States v. Rowe*,
   96 F.3d 1294 (9th Cir. 1996) ...............................................................48

*United States v. Sanmina Corporation*,
   968 F.3d 1107 (9th Cir. 2020) ..............................................................46

*Upjohn Co. v. United States*,
  449 U.S. 383, 101 S.Ct. 677 (1981) ............................................. 46, 48

*Wallulis v. Dymowski*,
  323 Or. 337, 918 P.2d 755 (1996) ........................................ 36, 39, 41

*Withrow v. Larkin*,
  421 U.S. 35, 95 S.Ct. 1456 (1975) ....................................................31

## RULES AND STATUTES

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1331 ....................................................................................1

28 U.S.C. § 1367 ....................................................................................1

28 U.S.C. § 2107(a) ...............................................................................1

42 U.S.C. § 1983 ............................................................. 1, 12, 32, 33

Fed. R. App. P. 4(a)(1)(A) ..................................................................1

Fed. R. Civ. P. 26(b)(3)(A) .................................................................51

Fed. R. Civ. P. 56(a) ...........................................................................34

Fed. R. Civ. P. 72(a) .......................................................... 2, 17, 18, 43

Fed. R. Evid. 501 ................................................................................45

Or. Rev. Stat. § 12.120 ................................................................ 2, 36, 37

Or. Rev. Stat. § 40.225 ........................................................................47

## OTHER

8 Charles Alan Wright et al., *Federal Practice and Procedure* section 2024.........52

## INTRODUCTION

Lane Fire Authority ("LFA") and Terry Ney ("Chief Ney") (collectively "LFA"), submit this brief in support of affirmance of the district court's judgment. Appellant Larry Merrill ("plaintiff" or "Merrill") asserted wrongful termination and deprivation of due process rights under 42 U.S.C. § 1983 against LFA and Stoelk Investigation and Consultation, LLC, and D. Craig Stoelk ("Stoelk"). In addition, he asserted defamation against LFA and negligence against Stoelk. Finding no issues of material fact for trial, District Court Magistrate Judge Mustafa T. Kasubhai issued Findings and Recommendation granting defendants' motions for summary judgment in their entirety. District Court Judge Michael McShane adopted in full Judge Kasubhai's Findings and Recommendation, correctly entering judgment in defendants' favor.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction of the federal due process claims pursuant to 28 U.S.C. § 1331, and the remaining state law claims pursuant to U.S.C. § 1367. This Court has jurisdiction of this appeal from a final judgment disposing of all parties' and claims pursuant to 28 U.S.C. § 1291. The district court entered final judgment for defendants on August 17, 2022, and the Notice of Appeal was timely filed on September 16, 2022, pursuant to 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES

1.      Did the district court err in granting LFA's motion for summary judgment against plaintiff's claims?

2.      Has plaintiff forfeited his appeal of Magistrate Judge Kasubhai's non-dispositive discovery order by failing to object to the district court pursuant to Fed. R. Civ. P. 72(a); in any event, is the order denying discovery on grounds of privileged communications reversible error?

## RULE 28-2.7 STATEMENT

Except for the following, all applicable statutes, etc., are contained in the addendum of Appellant's Opening Brief:  Or. Rev. Stat § 12.120.  *See* addendum following this brief.

## STATEMENT OF THE CASE

### I.      Nature of the Case.

This is an employment termination case arising from LFA's discovery of plaintiff's history of serious workplace misconduct after a female co-worker complained that plaintiff sent her unwanted, sexually suggestive text messages. With the assistance of LFA's legal counsel, Diana Moffat ("Moffat"), Chief Nye notified plaintiff that he was being placed on paid administrative leave pending an independent sexual harassment investigation.  Moffat engaged Stoelk to assist her

in rendering legal advice to LFA by investigating the matter and providing findings.

Stoelk's investigation uncovered substantiated allegations of years of sexual harassment by plaintiff that included inappropriate comments, touching, and texts to female coworkers, sexual intercourse in the fire station while on duty, and theft of a female coworker's undergarments during work hours. Plaintiff was provided Stoelk's entire investigation report that included summaries of each of his interviews and notice of his opportunity to respond and explain why he should not be terminated. Plaintiff testified on his own behalf at a pre-disciplinary hearing with his union representative and legal counsel present. Plaintiff's deposition testimony in this proceeding admits that that he received both adequate pre-termination notice and an opportunity to be heard.

Plaintiff filed federal claims against LFA asserting that the termination process violated minimum constitutional due process requirements because the scope of the investigation was too expansive and because, as alleged, he believed Chief Ney had predetermined his termination decision before plaintiff had an opportunity to present his side of the story. Plaintiff's defamation claim is based on LFA's publication of the investigative report to third parties in compliance with the governing Collective Bargaining Agreement ("CBA") and its participation in related administrative hearings.

## II.    Undisputed Facts.

Merrill worked for LFA as an engineer paramedic from 2007 through June 29, 2018.  ER-736.  Prior to the circumstances giving rise to this lawsuit, Chief Ney disciplined Mr. Merrill for a previous, serious incident by giving him a "last chance agreement" and transferring him to another location instead of terminating his employment.  ER-693-694.  Chief Ney considered plaintiff to be a good paramedic and a valued employee.  ER-694.

### A.    The Initiating Complaint.

The following facts are not disputed.  In October 2017, plaintiff was assigned to work with Whitney Hutcheson-Warren ("Hutcheson-Warren"), a firefighter paramedic with significantly less seniority with LFA.  ER-295.  On the morning of May 5, 2018, Hutcheson-Warren sent plaintiff a text asking if he would be a reference for a job application.  ER-36, 38.  Plaintiff agreed and Hutcheson-Warren responded, "Thank you! You're awesome."  ER-38.  Plaintiff then sent two back-to-back responsive texts, the first with the message: "So are you whit" and the second: "And stinking cute and sexy just saying sorry hope it's not to [sic] much or crossing the line."  ER-39.  Later that night, Hutcheson-Warren texted back with a screen shot of the conversation and the message: "Hey Larry, I just wanted to say that I don't appreciate the way you were talking to me earlier.  I

have fun working with you and I don't want to feel uncomfortable at work. I don't want to see you get in trouble." ER-39.

Hutcheson-Warren reported the text message to her supervisory Lieutenant Matt Snauer, who reported the incident to Captain Colwell and Chief Borland and Chief Ney was informed. ER-284-286.

## B. Plaintiff Notified of Workplace Sexual Harassment Investigation.

By letter dated May 15, 2018, Chief Ney notified plaintiff that he was being placed on paid administrative leave "pending an investigation for sexual harassment in the workplace" and explained that plaintiff would be "contacted by an independent investigator" and "Labor has been notified and made aware of the complaint and your status of being placed on administrative leave." ER-336. The letter also explained that "No disciplinary action will be taken without notice and a pre-disciplinary meeting as per the collective bargaining agreement." *Id.* Plaintiff understood at the time that the nature of the investigation concerned alleged sexual harassment. ER-151.

## C. Stoelk's Investigation and Findings.

Moffat engaged Stoelk to investigate Hutcheson-Warren's claims of sexual harassment. ER-79. Stoelk contacted Chief Ney regarding scheduling of witnesses' interviews, which he conducted between May 21 and May 31, 2018. ER-76-77; ER-278-317; ER-514-15. Stoelk began his investigation by

interviewing Hutcheson-Warren, Lieutenant Snauer and Captain Colwell and he ultimately interviewed 12 individuals, including two separate interviews of plaintiff. ER-280-307. Plaintiff's union representative, Rodney Stewart ("Stewart") was present for both interviews. ER-294, ER-304.

Hutcheson-Warren told Stoelk that the text messages were not plaintiff's only inappropriate actions towards her. ER-282. She reported that he commented to her about other women's appearances while they were driving in the ambulance or at the hospital, which she viewed as him assessing how sexy or hot the women appeared to him. *Id.* She also reported that plaintiff frequently told her about his sexually open marriage, asked if she ever engaged in three-way sex, and asked if she "had gotten laid yet?" ER-283. Hutcheson-Warren explained repeated instances of unwanted attention from plaintiff with regard to pretending to spank her bottom and an occasion when he told her "You look like you need to be bent over and shown a good time." ER-283.

Captain Colwell reported to Stoelk about an incident in 2007 when plaintiff sent an unsolicited photograph of his genitalia to Captain Colwell's wife before they were married. ER-286-87. Stoelk followed-up by interviewing Captain Colwell's wife and she confirmed that when she was a volunteer firefighter for LFA, she received a number of unsolicited text messages from plaintiff inquiring

"about how much pubic hair she had" and subsequently sent an image "that depicted a penis." ER-293.

Stoelk interviewed Megan Jozwiak, an engineer and firefighter who worked with plaintiff from 2009 to 2012. ER-288-89. Jozwiak reported that plaintiff had stolen her underwear from the communal laundry on several occasions. ER-289. In 2012, Jozwiak lodged a complaint after hearing from plaintiff's ex-wife that she had discovered underwear in his belongings that matched Jozwiak's missing underwear. ER-289. Stoelk subsequently interviewed plaintiff's ex-wife who explained that during their marriage, plaintiff admitted to her that he took Jozwiak's underwear. ER-292-93.

Thereafter, when Stoelk interviewed plaintiff, he largely denied the allegations or reported having no memory of the reported conduct. ER-294-299.

Stoelk continued his investigation and interviewed Jennifer Wilson, a volunteer firefighter who had consensual sexual relationship with plaintiff in 2012 and engaged in sexual relations with plaintiff inside the fire station. ER-300. Stoelk followed-up by interviewing Jesse West, a recruit fire fighter who was assigned to work with plaintiff in 2012. ER-301. Mr. West confirmed Ms. Wilson's reported sexual encounter with plaintiff at the fire station in 2012. ER-302. Based on this information, Stoelk interviewed plaintiff a second time and plaintiff denied that he engaged in sexual acts at the fire station. ER-304.

Stoelk prepared a 40-page report summarizing his witness interviews and his findings of workplace policy violations and conduct that "may" have constituted criminal acts of sexual harassment and theft. ER-314. The report includes the following finding:

> "Regardless of the severity of criminal probability of Mr. MERRILL's behavior, the commentary, touching of others and the actual sexual conduct on employer's premises reflects that Mr. MERRILL has engaged in far more than an isolated act of a mistakenly sent text message to an initial victim, rather this was simply the last of a long time span of sexual misconduct by Mr. MERRILL at the LFA with a number of female staff. This misconduct has the appearance of a form of chronic misconduct."

ER-314. Stoelk's additional findings include:

> 1. "Mr. MERRILL has engaged in a continuous pattern of numerous behaviors directed at current and past female staff affiliated the LFA and that these behaviors are in violation the LFA policies related to Sexual Harassment, and creating a hostile workplace.
>
> * * * The behavior on the part of Mr. MERRILL is chronic and has negatively impacted five known female staff."
>
> 2. "Mr. MERRILL has engaged in behaviors that if reported to law enforcement would constitute criminal acts, including harassment and theft.'
>
> 3. "Mr. MERILL has represented himself during this investigation process as an untruthful person."

ER-316-17.

**D.      Notice of Investigation Results and Pre-disciplinary Meeting.**

By letter dated June 5, 2018, Moffat notified plaintiff and his union

representative of the following: (1) "proposed disciplinary action of termination of

[his] employment" pending a pre-disciplinary meeting; (2) "the grounds for the

action"; (3) his "right to respond either orally or in writing"; and (4) the time for

the hearing on June 29, 2018.  ER-337.  The letter attached Stoelk's full

investigative report.  *Id.*

The June 5th letter identified the grounds for the disciplinary action under

consideration, stating: "This meeting involves allegations that you have conducted

yourself in violation of the following policies, as detailed in the investigatory

report:

- LFA Policy 2.4 Discipline
- LFA 2.1 Standards of Conduct
- LFA 2.2 Workplace Harassment/Sexual Harassment
- LFA Policy 2.3 Violence Free Workplace
- ORS 166.065 Harassment
- ORS 164.043 Theft in the third degree"

*Id.*  Plaintiff testified that this letter notified him of the specific violations alleged

against him, and he received and reviewed the 40-page investigative report.

ER-153, ER-155.

Plaintiff was informed of his right to have union representation at the

meeting and the letter explained that "[i]f you appear in person, or appear via a

written statement, the Chief will take your statements into consideration before making his final disciplinary decision."  ER-337-338.

### E. Pre-disciplinary Meeting and Notice of Termination.

On June 29, 2018, Merrill attended the scheduled disciplinary meeting with both his attorney, Erin Gould, and his union representative.  ER-141-142.  Plaintiff understood that he had the opportunity to provide a written rebuttal to the employment charges or to appear in person to tell his side of the story.  ER-142. Plaintiff chose to appear in person, and he spoke on his own behalf:

> "Q:    And during this meeting with the chief who presented information on your side?
>
> A:    On my side?
>
> Q:    Correct.
>
> A:    It was just testimony from me."

ER-222.  Plaintiff's union representative testified that pursuant to the CBA, a member's outside counsel is typically not permitted to attend the pre-disciplinary meeting because, at that point, "it's [an] internal" matter.  ER-371.  However, upon plaintiff's counsel's request, LFA made an exception and, while his counsel was permitted to attend but not speak at the hearing, she was offered an opportunity to provide a written statement regarding her "due process concerns[.]"  ER-49.

At the disciplinary hearing, Chief Ney found that plaintiff failed to provide any evidence refuting the investigation findings or invalidating the grounds for

termination.  ER-59.  Had plaintiff shown some remorse or provided physical evidence about the offensive text message, Chief Nye would have considered discipline short of termination "[b]ut nothing [he] heard at that meeting changed [his] opinion.  It was just a rehash of what had already been said."  ER-59.

At the conclusion of the hearing, Chief Ney terminated plaintiff's employment, and gave him a prepared letter of termination.  ER-428.

### F.      Post-disciplinary Grievance Process.

After plaintiff's termination, the union filed a grievance on his behalf.  ER-145; ER-363.  The procedure followed throughout the termination process was not grieved, and the union identified no compliance issues with the procedures required by the CBA.  ER-363-364.  Rather, the union initially filed a grievance because it felt termination was not warranted at that time.  ER-381.  However, upon completing the grievance process the union agreed with the termination decision and voted against proceeding with grievance arbitration.  ER-387-388.

### G.      Post-termination Administrative Hearings.

On September 25, 2018, Chief Ney testified at plaintiff's related hearing with the Oregon Employment Department.  ER-46-47.  On August 13, 2019, Chief Ney testified at plaintiff's contested-case hearing with Department of Public Safety Standards and Training ("DPSST") concerning the revocation of plaintiff's DPSST certifications.  ER-47.

## III.  Procedural History

Plaintiff filed his complaint alleging wrongful termination, 42 U.S.C. § 1983 deprivation of rights, defamation, and negligence on June 18, 2020.  ER-735.  The wrongful termination claim against LFA and the deprivation of rights claim against Chief Ney allege the same due process violations.  ER-738, 740.  The defamation claim asserts vicarious liability against LFA regarding statements included in Chief Ney's letter terminating plaintiff's employment on June 29, 2018.  ER-741-742.

After discovery and the completion of depositions, LFA moved for summary judgment against all of plaintiff's claims.  ER-702.

During the summary judgment briefing process, Magistrate Judge Kasubhai heard argument on a discovery dispute concerning the privileged nature of email communications between Chief Ney and investigator Stoelk.  On December 6, 2021, the magistrate judge ordered additional briefing on the issue:

> "* * *As to the privilege issues the Court rules as follows:
> (1) communications between Chief Nye [sic] and any individual below the rank of Assistant Chief are discoverable or subject to a privilege log to be disclosed to Plaintiff for review.
> Communications between Attorney Moffat and Chief Ney are privileged and therefore not discoverable in this lawsuit.  The Court will permit the parties to submit briefing as to the relationship between Attorney Moffat and Defendants Stoelk and Chief Ney as well as whether their communications are privileged pursuant to Or. Rev. Stat. 40.225 and FRCP 501. * * *."

ER-754.

Thereafter, plaintiff filed his response in opposition to LFA's motion for summary judgment and LFA filed its reply in support of summary judgment. ECF-41; ECF-42.

In compliance with the discovery order, plaintiff filed a memorandum of law, which the court viewed as a motion to compel discovery, seeking production of email communications between Chief Ney and Stoelk. ECF-44. Plaintiff argued that Stoelk was not Moffat's representative contending that he was not hired for the purpose, or in anticipation, of litigation and that if privileged applied, it was waived by Chief Ney's testimony at the two related administrative hearings. ECF-44.

LFA opposed plaintiff's motion to compel discovery, clarifying at the outset that plaintiff's request for email communications between Chief Ney and Stoelk raised an "academic" discussion of privilege since "the recent discovery search produced no emails between Stoelk and Moffat or Ney." ECF-53, p. 1.

Substantively, LFA contended that because Moffat had engaged Stoelk to assist in providing legal services to LFA by conducting an investigation into the sexual harassment charge against plaintiff, Stoelk was Moffat's agent and the attorney-client privilege precluding disclosure of confidential communications applied to any email communications of confidential communications between Chief Ney and Stoelk. *Id.* p. 2. LFA further contended that the privilege was not

waived because Chief Ney administrative hearing testimony did not disclose attorney-client protected confidential communications. *Id.* p. 5.

In the meantime, Stoelk filed his motion for summary judgment against all of plaintiff's claims, to which plaintiff responded and Stoelk replied. ER-468; ECF-57, ECF-61. A summary judgment hearing took place on February 24, 2022. ECF-62.

On March 17, 2022, Magistrate Judge Kasubhai issued an order denying plaintiff's motion to compel on the ground that Stoelk's communications with Moffat and Chief Ney are privileged. ER-31. Judge Kasubhai reasoned that "[u]nder the unambiguous terms of the statute [ORS 40.225(2)], Defendant Stoelk is a lawyer's representative." *Id.* Judge Kasubhai further found that their statements during judicial or quasi-judicial public hearings were not privileged "nor did such statements constitute waiver in this case." *Id.* Additionally, publication of the investigative report to third parties did not waive the privilege. *Id.*

On July 19, 2022, Magistrate Judge Kasubhai issued his Findings and Recommendation granting summary judgment against all of plaintiff's claims. ER-6-7. The court concluded that no genuine issue of material fact existed to dispute that plaintiff received all the process he was due from LFA and Chief Ney.

ER-24.  After addressing the evidence and each of plaintiff's arguments, the court

summarized it's ruling on this issue as follows:

> "At bottom, Ms. Hutcheson-Warren reported an inappropriate
> text message that resulted in an investigation into Plaintiff for
> sexual harassment.  Plaintiff received notice of the investigation.
> The investigation found serious allegations of misconduct.
> Plaintiff received a detailed notice of the allegations—including
> allegations unrelated to the text message that served as the
> investigation's genesis—well in advance of his pre-disciplinary
> hearing and Plaintiff had ample time to prepare written or verbal
> responses to those allegations.  A hearing was held at which
> Plaintiff had the right to present his side of the story.  At the
> conclusion of the hearing, Chief Ney determined that termination
> of Plaintiff was appropriate."

ER-24.

Plaintiff filed objections to the Findings and Recommendations, which

defendants opposed.  ECF-67; ECF-68; ECF-69.

On August 17, 2022, Judge Michael J. McShane, reviewing the case *de

novo,* found no error and adopted in full Judge Kasubhai Findings and

Recommendation.  ER-3-4.  Judge McShane's order summarized his ruling as

follows:

> "As Plaintiff confirmed in his deposition, he received more than
> enough notice regarding the serious charges he faced.  These
> charges were based on numerous allegations, from numerous
> witnesses, regarding Plaintiff's actions of the years. * * *.
> Plaintiff takes issue with the fact that the chief came to the hearing
> with a prepared termination letter.  Given the consistency of the
> allegations amongst the numerous witnesses in the 40 page
> investigative report, the fact that Plaintiff did not expressly most
> of the allegations, this was not surprising.  Nor is it surprising that

> when the Plaintiff failed to change his stance at the hearing, the
> chief made the decision to terminate Plaintiff."

ER-4.

Judgment for defendants was entered on August 17, 2022. ER-2.

## SUMMARY OF ARGUMENT

Plaintiff's violation of due process claims against LFA and Chief Ney fail as a matter of law because his own deposition testimony establishes that he was provided sufficient notice and a meaningful opportunity to be heard throughout the termination process, including post-termination grievance procedures. Moreover, the record establishes plaintiff was given pre-termination notice of the full extent of the charges against him and the 40-page investigative report that provided all of the evidence supporting the charges of plaintiff's sexual harassment in the workplace the had been ongoing for years. The district court judge correctly adopted the magistrate judge's findings and recommendation granting summary judgment against plaintiff's due process claims. Despite that the district court had no reason to reach the application of qualified immunity, which precludes Chief Ney's liability as a matter of law, that alternative reason for the judgment is preserved and provides another basis to affirm.

Plaintiff's defamation claim against LFA fails as a matter of law because it is time-barred by Oregon's applicable one-year statutory limitations period. In any event, as the district court correctly concluded, the alleged defamatory statements

by Chief Ney were protected by the absolute privilege doctrine because they were made in pursuit of rooting out sexual harassment and in the discharge of Chief Ney's lawful duties as fire chief.  Moreover, although the district court did not have reason to address Chief Ney's qualified privilege immunity or that plaintiff mischaracterized the purported defamatory statements which were, in fact, true, both those preserved grounds provide alternative reasons for affirmance.

Finally, plaintiff's claim of error regarding the magistrate judge's non-dispositive discovery ruling denying his motion to compel attorney-client privileged communications is not preserved for this Court's review because plaintiff failed to object to that ruling with the district court pursuant to Federal Rule of Civile Procedure 72(a).  In any event, even if reviewed, the district court's correctly ruled that the scope of the attorney-client privilege precluded disclosure of any emails containing confidential communications between Chief Nye and LFA's legal counsel's representative, investigator Stoelk.  However, even if the ruling was legally erroneous, plaintiff has not met his burden to demonstrate that the denial of discovery resulted in actual and substantial prejudice affecting the outcome of this case.  In fact, the only relevance to the discovery of the speculative confidential email communications that plaintiff raised below relates to an argument that Chief Ney controlled the outcome of the Stoelk's investigation, which plaintiff did not raise in his opening brief and, therefore, has abandoned on appeal.

Plaintiff failed to present evidence sufficient to create a genuine issue of material fact as to any of his claims against LFA and Chief Ney. The judgment in defendants favor should be affirmed.

## ARGUMENT

### I. Standard of Review.

This Court reviews a district court's grant of summary judgment *de novo*. *Toguchi v. Chung*, 391 F.3d 1051, 1056 (9th Cir. 2004). Viewing the evidence in the light most favorable to the nonmoving party, this Court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. *Id.*

LFA agrees that the district court's discovery rulings are reviewed for abuse of discretion and will not be disturbed without "the clearest showing that denial of discovery resulted in "actual and substantial prejudice to the complaining litigant." *Hallett v. Morgan,* 296 F.3d 732, 751 (9th Cir. 2002) (internal quotations marks and citation omitted). However, in this case, because a magistrate judge issued the non-dispositive discovery order and plaintiff did not file objections with the assigned district court judge, Fed. R. Civ. P. 72(a) precludes this Court's review of plaintiff's claimed error in the magistrate judge's denial of his motion to compel.

If reviewed, this Court reviews district court rulings on the scope of the attorney-client privilege *de novo,* as they involve mixed questions of law and fact.

*United States v. Richey*, 632 F.3d 559, 563 (9th Cir. 2011). The court's factual findings are reviewed for clear error. *Id.* "A finding is clearly erroneous if it is illogical, implausible, or without support in the record." *United States v. Graff*, 610 F.3d 1148, 1158 (9th Cir. 2010).

## II. Plaintiff's Wrongful Termination and Deprivation of Rights Claims Fail as a Matter of Law.

The district court properly granted summary judgment against plaintiff's wrongful termination and deprivation of rights claims because the unrefuted evidence establishes that LFA and Chef Ney provided adequate procedural safeguards throughout the termination process. ER-2-4; ER-6-30.

### A. Standards for Constitutionally Required Due Process.

The Due Process Clause forbids governmental deprivation of substantive rights without constitutionally adequate procedure. *Shanks v. Dressel*, 540 F.3d 1082, 109-91 (9th Cir. 2008). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty or property." *Carey v. Piphus*, 435 U.S. 247, 259, 98 S. Ct. 1042 (1978).

To prevail on a procedural due process claim "the plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F3d 957, 983 (9th Cir. 2011); *see*

*Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). The parties agreed that plaintiff held a property interest in his employment with LFA.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893 (1976) (internal quotations omitted). The "essential requirements" of pre-termination process are "notice and an opportunity to respond." *Clements v. Airport Auth. Of Washoe Cty.*, 69 F3d 321, 332 (9th Cir. 1995). Specifically, constitutional due process in the employment context requires (1) oral or written notice of the charges against the employee; (2) an explanation of the employer's evidence; and (3) an opportunity to present their side of the story. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("*Loudermill*"). The execution of these requirements are "flexible" and call for "such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593 (1972).

Meaningful notice and an opportunity to be heard is satisfied when "the employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits." *Loudermill*, 470

U.S. at 542.  Although "some kind of hearing" is necessary before an employee

may be terminated from the protected property interest in their employment, "it

need not be elaborate."  *Id.* at 542, 545.  As the district court correctly noted, "[i]n

fact, it can be 'very limited' because 'the pretermination hearing should be an

initial check against mistaken decisions—essentially, a determination of whether

there are reasonable grounds to believe that the charges against the employee are

true and support the proposed action."  ER-17, quoting *Gilbert v. Homar*, 520 U.S.

924, 929, 117 S. Ct. 1807 (1977).  The United States Supreme Court stated in

*Loudermill,* "[t]o require more than this prior to termination would intrude to an

unwarranted extent on the government's interest in quickly removing an

unsatisfactory employee."  470 U.S. at 546.

### B.     The Evidence Establishes Sufficient Due Process.

Plaintiff reprises his trial court arguments in opposition to defendants'

motions for summary judgment and repeats conclusory assertions that are contrary

to the evidence, including plaintiff's own deposition testimony.  Plaintiff argues

that "all of the allegations brought against him were not presented to him during

the investigation and that he was not afforded the opportunity to respond to them."

Opening Br., p. 31.  The district court correctly rejected this contention, finding no

genuine issue as to any material fact.

### 1. Sufficient Notice and Meaningful Opportunity to be Heard.

According to plaintiff, LFA failed to notify him that the disciplinary investigation "expanded in scope to include remote and obscure allegations from as far back as 2007" and failed to provide a meaningful opportunity to respond to the evidence of misconduct. *Id.* at p. 26. The following undisputed evidence establishes plaintiff received pretermination notice of the full extent of the charges against him and a meaningful opportunity to respond:

1. Chief Ney's May 15, 2018 letter notified plaintiff that LFA was undertaking "an investigation for sexual harassment in the workplace" (ER-336);

2. Plaintiff received LFA's June 5, 2018 letter identifying the specific charges alleged against him, enclosing a 40-page investigative report with grounds for those charges, including the evidence of his long history of workplace misconduct, and informing him of his opportunity to respond either in writing by June 25, 2018 or in person at a pre-disciplinary hearing on June 29, 2018 (ER-337-338);

3. Plaintiff's deposition testimony confirmed he received and reviewed the above materials, and admitted that he was put on notice of the charges against him (ER-151);

4.      At the June 29, 2018 pre-disciplinary hearing, plaintiff spoke on his own behalf, and with union representation and his legal counsel present,[1] he was given the opportunity to dispute the charges and explain why he should not be terminated (ER-222);

5.      Despite initially grieving the proposed discipline of termination, the union voted to reject a grievance arbitration after full consideration of the merits of the termination decision (ER-360-363), and the union had no issues with the procedure afforded to plaintiff in compliance with the CBA.  ER-363-364.

Since plaintiff has not, and cannot, set forth evidence to dispute his own deposition testimony, there is no issue of fact that the June 5, 2018 letter and report put him on notice of the charges against him prior to the June 29, 2018 pre-disciplinary hearing.  Plaintiff has not presented any authority requiring LFA to have provided this notice sooner or prior to the conclusion of the investigation, and plaintiff never disputed the sufficiency of the three-week period of time to prepare a response.  Nevertheless, plaintiff was notified at the outset that the investigation would broadly cover "sexual harassment in the workplace" and was not limited in scope or time to only the most recent charge related to the "cute and sexy" text

---

[1] The CBA does not authorize members to "bring their own lawyers" to a pre-disciplinary hearing (ER-371); however, plaintiff's attorney received an exception to be present and was invited to submit any due process concerns in writing. ER-49-50.

message.  ER-336.  Plaintiff further admits that when interviewed during the investigation the grounds for the charges against him were discussed.  ER-37.

Additionally, there is no material issue of fact regarding whether plaintiff was afforded a meaningful opportunity to be heard.  Plaintiff's own deposition testimony refutes his claim that he had no opportunity to respond to the charges against him during the June 29, 2018 hearing.  ER-222 ("Q:  And during this meeting with the chief who presented information on your side?"  "A: On my side?"  "Q: Correct." "A:  It was just testimony from me.").

Plaintiff attempts to manufacture an issue of disputed fact by arguing that a jury could find Chief Ney predetermined his termination decision prior to the pre-disciplinary meeting and, therefore, plaintiff's opportunity to be heard was not meaningful.  Plaintiff bases this argument on the fact that Chief Ney came to the pre-disciplinary hearing with a prepared termination letter.  However, Chief Ney's uncontroverted deposition testimony establishes that he prepared both a last chance agreement and a termination letter prior to the pre-disciplinary hearing and decided to issue the termination letter "after seeing the results of the investigation and going through the hearing."  ER-58.  Chief Ney was open to "consider[ing] not terminating him[,] [b]ut nothing [he] heard at that meeting changed [his] opinion. It was just a rehash of what had already been said."  ER-59.

25

Despite that plaintiff "strongly disputes" another disciplinary letter was prepared (Opening Br., p. 19), having no evidence to support that belief, plaintiff's mere speculation does not create an issue of fact on that point. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("the non-moving party must show more than the mere existence of a scintilla of evidence" or "metaphysical doubt" as to the material facts at issue.). As Judge Michael McShane noted in his Order adopting the magistrate judge's Findings and Recommendation and granting summary judgment:

> "Plaintiff takes issue with the fact that the chief came to the hearing with a prepared termination letter. Given the constituency of the allegations amongst the numerous witnesses in the 40 page investigative report, the fact that Plaintiff did not expressly deny most of the allegations was not surprising. Nor is it surprising that when the Plaintiff failed to change his stance at the hearing the chief made the decision to terminate Plaintiff."

ER-4.

Regardless, even if the evidence showed that Chief Ney prepared a termination letter only, plaintiff's claims would not survive summary judgment. The post-termination grievance procedure followed pursuant to the CBA would have remedied any pre-termination deficiencies, including any shortcoming in plaintiff's opportunity to be heard, and afforded all the process that was due as a matter of law. *See Moore v. King Cty. Fire Prot. Dist. No. 26*, 327 F. App'x 5, 6 (9th Cir. 2009) ("even assuming the pre-termination hearing was procedurally

deficient, available post-hearing remedies in the form of detailed grievance procedures established by the collective bargaining agreement satisfied [plaintiff's] procedural due process right to present evidence before an impartial decision maker"); *Armstrong v. Meyers*, 964 F.2d 948, 950 (9th Cir. 1992) ("public employer may meet its obligations to provide due process through grievance procedures established in a collective bargaining agreement").

Plaintiff's union representative, Rodney Stewart, was present at the pre-disciplinary hearing and, while he could not remember specifics of what was said, he testified: "I am confident at some point [plaintiff] had the opportunity to do that" - - to defend against the allegations brought against him. ER-72. In fact, plaintiff testified that LFA followed the discipline and discharge procedure required by the CBA (ER-139), including plaintiff's opportunity to consult with his union representative prior to the pre-disciplinary meeting.[2] ER-138-139. The undisputed evidence is that the union had no grievances with the procedure afforded to plaintiff in compliance with the CBA. ER-363-364.

Based on the foregoing, plaintiff was fully apprised of the charges against him and was afforded a meaningful opportunity to present his side of the story

---

[2] Specifically, plaintiff confirmed that LFA complied with the procedural due-process terms of CBA provisions 13.2 and 13.3 (ER-138-39), which are set forth in the Opening Brief Addendum at p. 23.

during the investigation and pre-disciplinary hearing, and subsequently during the union's post-termination grievance process.

### 2. A Fair and Impartial Investigation.

Plaintiff argues that his procedural due process rights were violated because the investigation was not fair or impartial based on the following: (1) the investigation uncovered nine-year-old allegations of his sexual misconduct; (2) Stoelk found the evidence of misconduct met statutory standards for criminal harassment and theft; (3) the investigative report included inflammatory statements; and (4) the report violated requirements outlined in the CBA. Opening. Br., p. 33. The district court correctly rejected these contentions that fail to raise a genuine issue as to any infringement on plaintiff's constitutional due process rights. ER-19-24.

Plaintiff provides no authority that a neutral third-party investigation into allegations of sexual misconduct that uncovers additional allegations of sexual misconduct provides evidence that the investigation was neither fair nor impartial. *See* ER-19-20 (finding no authority for the proposition that a government employer's investigation into workplace sexual harassment must be limited to recent complaints and must disregard reports of older misconduct).

The record demonstrates that the investigation began with interviews of the key witnesses regarding the "sexy and cute" text message and, as additional

allegations came to light, the investigation interviewed people that were reported to have first-hand knowledge of the additional allegations, including interviewing plaintiff a second time to provide an opportunity for him to respond to all the allegations. ER-279-305. There is no evidence to suggest that LFA either anticipated or controlled what the investigation would reveal, and plaintiff's contention improperly suggests that the investigator should not have documented the objective results of his investigation or his interpretive findings.

Both plaintiff's and Stewart's testimonies, which admit that LFA complied with the procedural due process provisions of the CBA, reject the contention that the investigation or the report violated the CBA. ER-138-139; ER-363-364. Even without this unrefuted evidence, the magistrate judge correctly concluded that "the fact that the CBA provided for a post-termination grievance procedure forecloses Plaintiff's argument." ER-24.

On appeal, plaintiff raises a new contention suggesting that Stoelk's inability to produce audio recordings of the witness interviews during discovery in this case because his computer had crashed at some point prior to this litigation somehow impairs the credibility of the reported allegations and investigation findings. Plaintiff fails to acknowledge not only that plaintiff's union representative was present during his interviews, but also a copy of the audio recordings of the interviews were provided to Stewart. ER-384-385.

In any event, plaintiff's due process claim does not turn on a credibility battle of his word against defendants' evidence. Plaintiff does not create a factual issue by contradicting his deposition testimony and the evidentiary record and claiming on appeal that he would "testify that all of the allegations brought against him were not presented to him during the investigation and that he was not afforded the opportunity to respond to them" in Opening Br., p. 31; ER-122, ER-151; *see Kennedy v. Allied Mut. Ins. Co.*¸ 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is to a party cannot create an issue of fact by affidavit contradicting his prior deposition testimony" because summary judgment loses its utility if courts cannot screen out sham issues of fact).

The record establishes that plaintiff was given notice of the charges, including the 40-page investigative report explaining the evidence against him, and had the opportunity both before his termination and after his termination through the union's grievance procedures, to challenge the accuracy of his reported misconduct and the validity of investigation findings. Having been fully informed of the evidence supporting his termination and having had the opportunity to refute that evidence and challenge any aspect of the report, the district court correctly determined that plaintiff's due process rights were adequately protected as a matter of law. *Loudermill*, 470 U.S. at 543, 546 (explaining that notice and "some

opportunity" to rebut the charge before the termination is effective satisfies procedural due process).

### 3.     No Evidence of a Biased Decisionmaker.

Plaintiff argues a genuine issue of material fact exists as to whether the termination process was constitutionally deficient because, according to plaintiff, Chief Ney had already decided to terminate him before the pre-disciplinary hearing.  Plaintiff bases this theory solely on the contention that "Chief Ney has provided varying accounts as to how he came to the determination to terminate [plaintiff], the majority of which suggest he made the decision to terminate prior to the disciplinary hearing."  Opening Br., p. 31.

As an initial matter, the magistrate judge correctly rejected plaintiff's characterization of Chief's Ney's rationale as a "shifting narrative" finding it unsupported by the record.  ER-21-23.  The magistrate judge properly concluded:

> "A close review of the relevant explanations instead reveals that Chief Ney based his decision largely on Stoelk's report, which the Chief did receive before the meeting, but went into the hearing open to less drastic alternatives than termination.
>
> [Reviewing the three accounts of the rationale for Chief Ney's termination decision]
>
> When viewed in context, even in the light most favorable to Plaintiff, the 'three accounts of when he decided to terminate Plaintiff' do not give rise to a reasonable inference that Chief Ney predetermined the decision to terminate Plaintiff."

*Id.*

More fundamentally, however, plaintiff's contention does not raise a genuine issue of material fact of constitutionally intolerable bias in the decision-making process. In this context, government defendants are presumed to have exercised rationale, good-faith decision-making, and plaintiffs have the burden to overcome that presumption by showing that the decisionmaker was actually biased or that "the probability of actual bias on the part of the * * * decisionmaker is too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456 (1975). To show actual bias, the plaintiff must show the decisionmaker "display[ed] a deep-seeded favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147 (1994); *see Strivers v. Pierce*, 71 F.3d 732, 744 (9th Cir.1995) (explaining some partiality or hostility standing alone does not rebut the presumption of honesty in government decision making). There is no evidence LFA or Chief Ney held bias or antagonism against plaintiff. Rather, the evidence demonstrates that Chief Ney permissibly formed an opinion based on the unfolding of facts during the disciplinary process, and he chose to terminate plaintiff because plaintiff presented no explanation or evidence that refuted, or took any responsibility for, the numerous corroborated allegations of misconduct. ER-52; ER-55-56; ER-58-59.

Significantly, plaintiff does not renew his argument below contending that Chief Ney directed investigator Stoelk to limit his investigation and discouraged

Stoelk from interviewing other individuals who worked at plaintiff's current fire station. ER-20. The magistrate judge properly rejected that argument, finding that plaintiff had failed to create a genuine issue of fact that Chief Ney controlled the investigation, particularly in light of Stoelk's testimony as to the thoroughness of his investigation. *Id.* at 20-21, quoting ER-544. Plaintiff has correctly abandoned that argument on appeal and may not raise it for the first time in his reply brief. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) ("It is well established in this circuit that [t]he general rule is that appellants cannot raise a new issue for the first time in their reply briefs.") (Citation and internal quotation marks omitted).

Accordingly, the district court correctly concluded no genuine issue of fact existed to dispute that Chief Ney interfered with a fair and impartial investigation and termination decision.

### C. Based on the Foregoing Evidence, Plaintiff's Section 1982 Deprivation of Rights Claim against Chief Ney Also Fails.

Plaintiff's opening brief does not present any argument in support of his 42 U.S.C. § 1983 claim against Chief Ney. Beyond the brief's Introduction. which merely includes plaintiff's "42 U.S.C. § 1983 deprivation of rights" claim in the list of claims for which he contends "considerable issues of material fact exist", plaintiff makes no independent argument that his §1983 claim against Chief Ney should have survived summary judgment. For this reason alone, this Court should

33

affirm summary judgment against this claim. *See United States v. Kimble*, 107

F.3d 712, 715 n.2 (9th Cir. 1997) (arguments not coherently developed in briefs on

appeal are abandoned); *Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992)

(stating that issues raised in a brief that are not supported by argument are deemed

abandoned).

Nevertheless, for the same reasons that the district court correctly concluded

that plaintiff received adequate due process in his termination, plaintiff did not

establish a genuine issue of material fact in support of his claim that Chief Ney

violated his due process rights. Without a deprivation of any federal right,

plaintiff's § 1983 claim failed as a matter of law.

**D.      In Any Event, Chief Ney is Entitled to Qualified Immunity.**

Moreover, as LFA argued below, Chief Ney is entitled to qualified

immunity. ER-713-714. In § 1983 cases, the doctrine of qualified immunity

protects state officials from personal liability in their individual capacities for

official conduct so long as that conduct is objectionably reasonable and does not

violate a clearly established federal right. *Cmty. House, Inc. v. City of Boise,*

*Idaho*, 623 F.3d 945, 94 (9th Cir. 2010). It allows government officials to make

reasonable, but mistaken, judgments about open legal questions and "protects all

but the plainly incompetent or those who knowingly violate the law." *Ashcroft v.*

*al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074 (2011); *Hunter v. Bryant*, 502 U.S.

224, 229, 112 S. Ct. 534 (1991) (The qualified immunity accommodation for reasonable error exists because "officials should not err always on the side of caution because they fear being sued.") (Internal quotation marks omitted).

To overcome the application of qualified immunity, plaintiff must prove: (1) the official violated a statutory or constitutional right; and (2) the right was "clearly established" at the time of the challenged conduct. *Ashcroft*, 563 U.S. at 735; *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). As discussed above, Chief Ney provided legally adequate due process, precluding plaintiff's deprivation of rights claim and entitling Chief Ney to qualified immunity.

Even though plaintiff bears the burden of showing that the right at issue was clearly established, the opening brief makes no argument on this dispositive issue and merely states the conclusory assertion that "[t]he requirements for proper notice and due process afforded [plaintiff] were clearly established by the CBA which was not followed." Opening Br., p. 39. Plaintiff's undeveloped argument and failure to meet this burden or even attempt to satisfy it require affirmance of summary judgment. Fed. R. Civ. P. 56(a); *Kimble*, 107 F.3d at 715 n.2.

A state official's conduct does not violate a clearly established right unless the right's contours are sufficiently definite that "every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741. Qualified immunity applies unless existing precedent has placed the statutory

or constitutional question "beyond debate" and demonstrates the unconstitutionality of the officials' actions, as those actions unfolded in the specific context of the case at hand." *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016).

No legal authority places "beyond debate" the specific contours of what due process requires. Instead, due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey*, 408 U.S. at 481 ("It's flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure."). Chief Ney's written notice, his explanation of the evidence, and the opportunity afforded to plaintiff to tell his story did not violate procedural due process, but even if it did Chief Ney's conduct was not plain incompetence or a knowing violation of the law. At most, even if Chief Ney was mistaken about the constitutional process due, he acted reasonably under the particular circumstances and the interests involved.

Accordingly, this Court may affirm summary judgment on the ground that Chief Ney is entitled to qualified immunity.

## III. Plaintiff's Defamation Claim is Time-barred as a Matter of Law.

Plaintiff's claim for defamation is based on allegations that Chief Ney, while in the scope of employment, made "false statements that Plaintiff committed

statutory criminal acts of theft and harassment in his termination letter" that was provided "to third parties, including, but not limited to, the Oregon Department of Employment and the DPSST." ER-741-742. The district court correctly granted summary judgment and, as LFA argued below, plaintiff's claim fails as a matter of law for the following separate reasons: (1) the claim is time-barred; (2) the statements were protected by privilege; and (3) plaintiff failed to present any false statements. ER-715-719.

To prevail on a claim for defamation in Oregon, plaintiff must prove defendant (1) made a defamatory statement; (2) published that statement; and (3) caused a resulting special harm or presumptive special harm. *Nat'l Union Fire Ins. Co. v. Starplex Corp.,* 220 Or. App. 560, 584, 188 P.3d 332, 346, *rev den,* 345 Or. 317 (2008). "In the [employment] context, a statement is defamatory if it is false and ascribe conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, [or] profession." *Brown v. Gatti*, 341 Or. 452, 458, 145 P.3d 130, 133 (2006) (citations and internal quotations marks omitted). A defamatory statement is "published when heard or ready by a third party. *Wallulis v. Dymowski*, 323 Or. 337, 343, 918 P.2d 755 (1996).

### A.    Plaintiff's Claim is Time-Barred.

The statute of limitations for a defamation claim in Oregon is one year. Or. Rev. Stat § 12.120(2); *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024,

1048 (9th Cir. 2016).  The letter containing the alleged defamatory statements was "published" in June 2018, when it was provided to a third party—Rodney Stewart, plaintiff's union representative.  ER-337-338.  Plaintiff filed his defamation claim on June 18, 2020, almost two years from the publication of the allegedly defamatory statements, and after the applicable statute of limitations had run.[3]  ER-749.

Plaintiff argues that publication to Mr. Stewart does not count because he "was not someone from which [plaintiff] could experience reputational injury in this context."  Opening Br., p. 38.  Plaintiff cites no authority for this proposition, and defendants have found none.  *See* ER-26 ("Plaintiff offers no authority for his conclusory assertion that his union representative was incapable of perceiving a defamatory statement and the Court is aware of no such cases so holding.").

Additionally, as the district court correctly concluded, plaintiff's "awareness" standard misstates Oregon law.  Plaintiff argues that he was not "made aware that the defamatory statements were published to DPSST [until his hearing] on August 12, 2019."  Opening Br., p. 37.  Plaintiff's reliance on *Kobold* for the proposition that "[p]ublication means when someone's reputation is injured by the known false statements" is misplaced.  *Id.  Kobold* does not recognize an

---

[3] The Opening Brief does not cite to the applicable statute of limitations and does not dispute that Or. Rev. Stat. §12.120 applies.

"awareness" standard.  Rather, only in *dicta* the court rejected the plaintiff's argument based on a delayed lack of awareness of the published defamatory statement, stating:  "Finally, although [plaintiff] argued to the district court that she could not have been aware of the allegedly defamatory statements until the arbitrator issued his written decision * * * , in her briefing on appeal she states that she became aware of the statements upon attending the arbitration hearing * * *."  832 F.3d at 1048.  That rejection of plaintiff's argument rests on factual grounds, not on the application of Oregon law.

In any event, for the sake of argument only, even under plaintiff's "awareness" standard, it is undisputed that plaintiff knew or should have known that LFA disclosed the allegedly defamatory statements in the termination letter to DPSST by January 16, 2019.  Plaintiff's complaint admits "[o]n or about January 16, 2019, Plaintiff received notice from the * * * [DPSST] that his certification would be revoked because Plaintiff committed "sexual abuse" and "theft" while employed at [LFA]."  ER-738.  By his own admission, plaintiff had actual knowledge that LFA had published the allegedly defamatory statements to DPSST no later than January 16, 2019, making the filing of his claim on June 18, 2020 well past the one-year statutory limitations period.

Accordingly, the district court correctly granted summary judgment.

### B.    Privilege Immunity Applies.

Alternatively, plaintiff's defamation claim is barred by privilege.  Oregon

law recognizes two forms of privilege as a defense to an action for defamation:

absolute and qualified.  *DeLong v. Yu Enterprises, Inc.*, 334 Or. 166, 47 P.3d 8, 10

(2002).

Absolute privilege "is a complete bar to a claim of defamation and precludes

liability regardless of the defendant's state of the mind." *Johnson v. Brown*, 193 Or

App 375, 380, 91 P.3d 741, 744, *aff'd on reconsideration*, 95 P.3d 235 (2004)

(citing *Wallulis*,  323 Or. at 347-48, 918 P.2d at 760-61).  Absolute privilege

applies to "communications made in the discharge of a duty under express

authority of law."  *Id.* (quoting *Grubb v. Johnson et. al.*, 205 Or. 624, 631-32, 289

P.2d 1067, 1070 (1955).  For state officials, it extends to situations when "the

public's interest in the unhampered operation of the government, when exercising

such functions, outweighs an individual's interest in the preservation of

reputation."  *Wallulis*, 323 Or. at 349, 918 P.2d at 761.

Chief Ney is a state executive officer whose official duties require him to

investigate allegations of workplace harassment and impose corrective action.  ER-

660-661, ER-673.  Upon learning of allegations of sexual harassment against

plaintiff, Chief Ney initiated an investigation, which culminated in substantiated

reports of sexual harassment and theft, among other allegations.  ER-657-658.

After notice and a pre-disciplinary hearing, Chief Ney executed the performance of his lawful obligations as fire chief by issuing plaintiff's termination letter. ER-659; ER-680. Because "rooting out sexual harassment in public agencies falls squarely within the public interest[,]" Chief Ney's purported defamatory statement is immunized by absolute privilege. ER-27-28.

In addition, absolute privilege applies to defamatory statements made during or sufficiently related to quasi-judicial proceedings. *Johnson*, 193 Or. App. at 381, 91 P.3d at 744-45. Oregon courts have suggested this privilege extends to certain investigations that could trigger quasi-judicial proceedings. *DeLong v. Yu Enterprises*, 334 Or. at 169-171, 47 P.3d at 10-11. Plaintiff claims that Chief Ney defamed him in a letter following an investigation that was "used against him in at least two state administrative hearings." ER-739. Accordingly, the alleged defamation is absolutely privileged.

On appeal, plaintiff does not address the absolute privilege barring his claim and, instead, argues only that the purported defamatory statements "were blatantly false" and "led DPSST to conclude there was a "pending criminal investigation." Opening Brief, p. 39 (citing ER-536, excerpts from testimony at the August 12, 2019 DPSST from "Kayla Ballrot of the [DPSST]" (ER-531-532)). Although it is unclear who Kayla Ballrot is and what her role was at DPSST, her testimony that plaintiff submitted in support of his opposition to LFA's motion for summary

judgment rejects his contention that DPSST concluded there was a pending criminal investigation. *See* ER-537 ("Q. Okay. But as far as you know, there wasn't - - you never received any information from the employer that there was a criminal investigation?" "A. Not a criminal investigation, no.").

Further, a qualified privilege generally exists to protect three kinds of statements: "(1) those made to protect the defendant's interests; (2) those made to protect the employer's interests; or (3) those made on a subject of mutual concern to the defendant and the persons to whom the statement was made." *Tubra v. Cooke*, 233 Or. App. 339, 348, 225 P.3d 862, 867 (2010). The Oregon Supreme Court recognizes that employees and employers have a legitimate interest in free communications on work-related matters, especially when reporting on actual or suspected wrongdoing. *Lewis v. Carson Oil Co.*, 204 Or. App. 99, 103-04, 127 P.3d 1207, 1210-11 (2006) (quoting *Wallulis*, 323 Or. at 350, 918 P.2d at 762). Plaintiff has the burden of establishing that the privilege was abused because the publishers made the statements in bad faith or with actual malice. *Lewis*, 204 Or. App. at 104-05. Plaintiff does not address the application of qualified privilege immunity and presents no evidence that the purported defamatory statements were made in bad faith or with malice. Chief Ney was simply executing his duties to protect his employees and volunteers and maintain a workplace free of theft and harassment. ER-698-700.

Accordingly, the district court correctly granted summary judgment against plaintiff's defamation claim.

**C.     Plaintiff's Claim Fails as a Matter of Law Because the Purported Defamatory Statement is Not False.**

Plaintiff's claim mischaracterizes the purported defamatory statement by alleging that Chief Ney "made false statements that Plaintiff *committed* statutory criminal acts of theft and harassment in his termination letter[.]" ER-741-742 (emphasis supplied).  Plaintiff fails to recite the alleged defamatory statements accurately.  ER-659.  The termination letter does not state that plaintiff "committed" theft or harassment.  Instead, the letter accurately states that Chief Ney found evidence in the 40-page investigative report that plaintiff conducted himself in violation of statutes regulating those criminal activities.  *Id.* Specifically, the letter actually states: "I find evidence that you have conducted yourself in violation of the following:

- LFA Policy 2.4 Discipline
- LFA 2.1 Standards of Conduct
- LFA 2.2 Workplace Harassment/Sexual Harassment
- LFA Policy 2.3 Violence Free Workplace
- ORS 166.065 Harassment
- ORS 164.043 Theft in the third degree"

*Id.*  Because this alleged defamatory statement is not false, plaintiff's claim fails as a matter of law.  *See Bank of Oregon v. Indep. News, Inc.*, 298 Or 434, 437, 693

P.2d 35, 38 (1985) (recognizing right of an alleged defamatory statement as a complete defense and an absolute bar to relief).

The judgment against plaintiff's defamation claim should be affirmed.

## IV. The Magistrate's Discovery Ruling is Not Reviewable and, In Any Event, Does Not Support Reversal.

### A. Plaintiff's Claim of Error is Waived.

Federal Rule of Civil Procedure 72(a) precludes this Court's review of plaintiff's claimed error in Magistrate Judge Kasubhai's non-dispositive order denying plaintiff's motion to compel communications between Stoelk and Chief Ney as privileged. Fed. R. Civ. P. 72(a) provides:

> "Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."

Plaintiff has forfeited his opportunity to appeal the magistrate judge's discovery order issued March 17, 2022, because he did not file any objection to that non-dispositive order with the district judge assigned to the case, not even an

44

untimely objection.[4]  *See Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th

Cir. 1996) ("[A] party who fails to file timely objections to a magistrate judge's

nondispositive order with the district judge to whom the case is assigned forfeits its

right to appellate review of that order."); *accord Glenbrook Homeowners Ass'n v.

Tahoe Reg'l Planning Agency*, 425 F.3d 611, 619-20 (9th Cir. 1996).

### B. The Discovery Order Correctly Denied Disclosure of Attorney-Client Confidential Communications.

Plaintiff's motion to compel production sought discovery of email

communications between Chief Ney and Stoelk hoping to uncover evidence that

Chief Ney had predetermined to terminate him at the outset of the investigation

process.  Tr-13 (12.6.2021 Discovery Hearing).  In response, LFA produced the

few email communications it found between Chief Ney and Stoelk which were

limited to the topic of the scheduling of Stoelk's interviews of LFA employees,

and were not privileged confidential communications.  *See* ER-76-77; Tr-13

(12.6.2021 Discovery Hearing).  LFA did not locate any additional email

communications, making the application of the attorney-client privilege a purely

academic exercise, and one that cannot have resulted in "actual and substantial

prejudice to [plaintiff]."  *Hallett*, 296 F.3d at 751 (9th Cir. 2002); EFC-53, p. 1.

---

[4] Plaintiff filed Objections to Findings and Recommendation on August 2, 2022,
after the magistrate judge granted defendants' summary judgment motion, and
made no objection to the non-dispositive discovery ruling issued on March 17,
2022.  EFC-8.2.2022.

Moreover, as discussed above, the opening brief does not raise the argument plaintiff made below that a genuine issue of fact exists that Chief Ney predetermined his termination decision *at the outset of the investigation*. *See* II. B. 3., *supra*. Having abandoned that argument, which raised the only issue that would have made the subject email communications relevant, plaintiff has not and cannot show that the denial of his motion to compel resulted in "actual and substantial prejudice" to the outcome of this case. *Id.* However, even if the scope of the attorney-client privilege is addressed, plaintiff's claim of error has no merit.

Federal law governs the application and scope of the attorney-client privilege in nondiversity actions.[5] *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005); *see also* Fed. R. Evid. 501. "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d at 566 (citing

---

[5] The Ninth Circuit outlines the elements of the attorney-client privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at this instance permanently protected (7) from disclosure by himself [or herself] or by the legal adviser, (8) unless the protection be waived.

*Admiral Ins. Co. v. U.S. District Court*, 881 F.2d 1486, 1492 (9th Cir. 1989).

*Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677 (1981)).  The Ninth

Circuit recognizes a rebuttable presumption that when legal counsel is engaged it is

for the purpose of giving legal advice.  *United States v. Chen*, 99 F.3d 1495, 1501

(9th Cir. 1996).  It is well established that the privilege may extend to

communications with third parties who have been engaged to assist the attorney in

providing legal advice.  *United States v. Sanmina Corporation*, 968 F.3d 1107,

1116 (9th Cir. 2020).

The only issue raised by plaintiff's motion to compel was the application of

the attorney-client privilege to email communications between Chief Ney and

Stoelk.  Disclosure of Stoelk's investigation report was not at issue because

plaintiff and his union representative received the entire report as required by LFA

policies and the CBA.  Tr-11 (12.6.2021 Discovery Hearing).

Additionally, plaintiff has not disputed that confidential communications

between attorney Moffat and Chief Ney regarding the internal investigation into

complaints of plaintiff's workplace sexual harassment are protected from

disclosure by the attorney-client privilege.  Tr-16, 21 (12.6.2021 Discovery

Hearing) (plaintiff's counsel concedes communications between Moffat and Chief

Ney are "clearly" privileged and not discoverable).  Accordingly, the magistrate

judge correctly described the dispositive issue as whether the scope of the attorney-

client privilege extends to "the relationship between Attorney Moffat and Defendants Stoelk and Chief Ney[.]" ER-31.

Although courts look first to federal common law, state privilege law may guide the determination of the proper scope of the attorney-client privilege. *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996). In this case, the magistrate judge permissibly looked to Oregon privilege law for guidance. Or. Rev. Stat. 40.225 directly addresses the dispositive issue, describing the operation of the attorney-client privilege, in relevant part, as follows:

> "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
>
> (a) Between the client or the client's representative and the client's lawyer or *a representative of the lawyer*;
>
> (b) Between the client's lawyer and *the lawyer's representative* or the client's lawyer referral service;
>
> * * * * *."

Or. Rev. Stat. § 40.225(2) (Italics supplied).

Or. Rev. Stat. § 40.225(1)(f) defines "Representative of the lawyer" as "one employed to assist the lawyer in the rendition of professional legal services, but does not include a physician making a physical or mental examination under ORCP 44." Or. Rev. Stat. § 40.225(1)(b) defines "Confidential communications" as "a communication not intended to be disclosed to third persons other than those

to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."

There is no dispute Stoelk was engaged to conduct an internal investigation for the purpose of assisting Moffat in rendering legal advice to LFA. ER-78-79. The magistrate judge correctly concluded that "under the unambiguous terms" of the statute, Stoelk was a representative of Moffat, making the substance of his confidential communications with Moffat and/or Chief Ney privileged and protected from disclosure. ER-31.

Federal common law produces the same result. *See Upjohn Co. v. United States*, 449 U.S. at 390 (recognizing the attorney-client privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him [or her] to give informed advice"); *see e.g. United States v. Rowe*, 96 F.3d 1294, 1296 (9th Cir. 1996) (declining the invitation to "distinguish between fact-finding and lawyering" in resolving privilege issues"); *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482 (S.D.N.Y. 2019) ("Factual investigations conducted by an agent of an attorney * * * clearly fall within the attorney-client rubric.").

The opening brief argues Stoelk could only be a "representative of the lawyer" if his investigation report was treated as a legal memorandum, labelled

"confidential", and the report itself was intended to be protected by the attorney-client privilege.  Opening Br., p. 45.  Plaintiff cites no legal authority for this proposition, and merely because Stoelk's investigation report was disclosed on a limited basis, and in accordance with the CBA and in compliance with state administrative agencies, does not refute the undisputed evidence that Moffat engaged Stoelk to conduct the investigation to assist her in rendering legal advice to LFA.  ER-78-79.

The attorney-client privilege attaches to confidential communications between the attorney representative and the client irrespective of whether it includes unprivileged material.  Moreover, it does not matter that the communication was not made in anticipation of active or threatened litigation.  The privilege attaches to communications made in confidence within the course and scope of the attorney-client relationship.  *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (applying federal common law and stating the "critical component of the [attorney-client] privilege is whether the communication * * * is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication was made in confidence") (internal quotation marks omitted).

The magistrate judge also correctly rejected plaintiff's waiver argument.  ER-31.  Plaintiff argues waiver of attorney-client confidential communications

between Stoelk and Chief Nye based on limited disclosures that were not intended to broadly waive all attorney-client communications between Chief Ney and Stoelk. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (explaining that a waiver extends only to communications about the subject of the information actually disclosed, and not to all confidential communications in rendering legal services or assisting in that effort). Confidential communications between Moffat, Stoelk and/or Chief Ney were separate and apart from the investigation report and not disclosed during hearing testimony.

Plaintiff claims that the "[m]ost significant" waiver occurred when Stoelk testified at the unemployment hearing upon questioning that purportedly asked about his communications with Chief Ney. Opening Br, p. 46. No citation to the record is provided, likely because the record does not support that statement.[6] Stoelk was not asked to divulge the contents of any communication, and the fact that Stoelk chose to answer general questions by referencing conversations with Chief Ney about the scope of the investigation does not waive the attorney-client privilege. Plaintiff has conceded that Stoelk did not hold the privilege and, as

---

[6] The Opening Brief does not cite where in the record the waiver testimony is purportedly found. It appears that plaintiff relies on exhibits of excerpts of hearing transcripts he submitted in support of his motion to compel. The exhibits do not identify who is conducting the examination or who is testifying, although context helps to discern that information.

such, he could not waive it.  Tr-13-14 (12.6.2021 Discovery Hearing) ("The Court:

Okay.  Although Mr. Stoelk isn't in a position to waive that privilege.  It's not his

to waive. [Plaintiff's counsel]:  Correct.").

Chief Ney's testimony at the related contested-case hearings addressed his

relationship to Stoelk's investigation and did not divulge attorney-client

confidential communications.  In fact, the transcript shows that the attorney-client

privilege was specifically raised as to confidential communications and intended to

be maintained.  ER-513 ("Q:  Did you instruct Captain Colwell or Lieutenant

Snauer to talk to Mr. Merrill about the alleged text message?" "A:  No. On the

advice of legal counsel it was suggested we bring in an outside investigator to do

that." "Q: Okay.  I just want to - - Chief Nye [sic], I don't want to hear what your

counsel told you because that would be privileged.  So I just want to - - just want to

caution you on that.").  Plaintiff's string of citations presents inapposite case law

involving the inadvertent disclosure of a privileged document and does not address

testimony given during an administrative adversarial hearing.

Plaintiff's reliance on the work-product doctrine is also misplaced.  As the

Opening Brief recognizes, the work-product doctrine, by definition, does not apply

to email communications because it serves to protect "documents and tangible

things prepared by a party or his representative in anticipation of litigation."

Opening Br., p. 41 (quotation marks and citation omitted); Fed. R. Civ. P.

26(b)(3)(A). The LFA did not withhold production of any email communications based on the work-product doctrine and the magistrate judge did not rely on work-product immunity to deny plaintiff's motion to compel discovery. ER-31; ER-78-79.

In any event, plaintiff's cited case law does not support compelling discovery of attorney-client privileged communications in this case. In *United States v. Richey*, 632 F.3d at 567 and *Amy's Kitchen, Inc. v. Stukel Mountain Organics LLC*, 2016 WL 9406695 (D. Or., September 28, 2016) the attorney representatives were not engaged by an attorney for the sole purpose of investigating charges of sexual harassment that are inherently legal in nature and trigger the "prospect of litigation." *See* 8 Charles Alan Wright et al., *Federal Practice and Procedure* section 2024 (explaining that the test is whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the *prospect* of litigation") (emphasis in original).

Moreover, contrary to plaintiff's suggestion, the work-product doctrine is not confined to situations in which litigation is certain. *See Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006) ("[P]rovided the prospect of litigation was not remote * * *, the fact that the case hadn't begun and might never be brought did not disqualify [attorney's] jottings from the shelter of the work-

product doctrine.").  Plaintiff's cited cases do not involve communications between the attorney or attorney representative and client or questions about the application of work-product protections to such communications.

### C.    No Reversible Error is Demonstrated.

In any event, plaintiff has made no showing that the denial of discovery of email communications between Stoelk and Chief Ney, if error, resulted in "the clearest showing of actual and substantial prejudice."  *Martel v. County of Los Angele*, 56 F.3d 993, 995 (9th Cir. 1995).  Plaintiff bore the burden to demonstrate reversible error by showing that the outcome would have been different had the discovery been compelled.  *Id.*  Speculation as to what the discovery would enable plaintiff to demonstrate is insufficient.  *Butcher's Union Local No. 498 v. SDC Inv. Inc.*, 788 F.2d 535, 540 (9th Cir. 1986).

### CONCLUSION

For all the foregoing reasons, the district court order granting summary judgment in LFA and Chief Ney's favor should be affirmed.

Respectfully submitted this 30th day of March 2023.

HART WAGNER LLP

By:  /s/ *Janet M. Schroer*
        Janet M. Schroer, OSB No. 813645
        Ruth A. Casby, OSB No. 944225
        Of Attorneys for Defendants-Appellees
        Lane Fire Authority and Terry Ney

## <u>STATEMENT OF RELATED CASES</u>

There are no cases pending in this Circuit that satisfy the definition of "related case" under Circuit Rule 28-2.6.

DATED this 30th day of March 2023.

HART WAGNER LLP

By: /s/ *Janet M. Schroer*

Janet M. Schroer, OSB No. 813645
Of Attorneys for Defendants-
Appellees Lane Fire Authority and
Terry Ney

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,675 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); or

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

DATED this 30th day of March 2023.


HART WAGNER LLP


By:  */s/ Janet M. Schroer*
          Janet M. Schroer, OSB No. 813645
          Of Attorneys for Defendants-Appellees
          Lane Fire Authority and Terry Ney

ADDENDUM

# ADDENDUM INDEX

Or. Rev. Stat § 12.120………………………………………………………….ADD. 1

**12.120 Action on escape; action for defamation.** (1) An action against a sheriff or other officer for the escape of a prisoner arrested or imprisoned on civil process; or (2) An action for libel or slander shall be commenced within one year.
[Amended by 1957 c.374 §2]

**ADD. 1**