IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| LARRY W. MERRILL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | CA No. 22-35731 |
| | ) | |
| v. | ) | D.C. No. 6:20-cv-00984-MK |
| | ) | U.S. District Court for Oregon, |
| LANE FIRE AUTHORITY, TERRY | ) | Eugene |
| NEY, STOELK INVESTIGATION | ) | |
| AND CONSULTATION, LLC, an | ) | |
| Oregon Limited Liability Company, | ) | |
| and D. CRAIG STOELK, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

_____

**DEFENDANTS-APPELLEES STOELK INVESTIGATION AND CONSULTATION, LLC AND D. CRAIG STOELK'S ANSWERING BRIEF**

_____

On Appeal from the United States District Court
For the District of Oregon, Eugene, Honorable Magistrate Judge Mustafa Kasubhai
and Honorable Michael J. McShane

Jeffrey W. Hansen, OSB No. 923290
CHOCK BARHOUM LLP
121 SW Morrison Street, Suite 500
Portland, OR  97204
Telephone:  (503) 223-3000
Email:  jeff.hansen@chockbarhoum.com

Attorneys for Defendants-Appellees Craig Stoelk and Stoelk Investigation
and Consultation, LLC

**MAY 2023**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ........................................................................ 1

JURISDICTIONAL STATEMENT ............................................... 1

STATEMENT OF THE ISSUES.................................................... 2

    1. Did the District Court err in granting Defendants Stoelk and Stoelk Investigation's motion for summary judgment against Plaintiff's wrongful termination and deprivation of rights conspiracy claims? .............................................................. 2

    2. Did the District Court err in finding Plaintiff's negligence claim was barred by *Onita Pacific Corp. v. Trustees of Bronson*? ........ 2

STATEMENT OF THE CASE........................................................ 2

    1. *Introduction* ........................................................................ 2
    2. *Events Leading to Termination Proceedings* ..................... 4
    3. *Investigation of Allegations* .............................................. 5
    4. *Termination Proceedings* ................................................ 11
    5. *Procedural History* ......................................................... 14

SUMMARY OF THE ARGUMENT .......................................... 17

ARGUMENT ............................................................................. 19

    *I.* Standard of review........................................................ 19

    *II.* The District Court's dismissal of Plaintiff's wrongful termination and deprivation of rights claim was proper where the evidence shows that the minimum due process requirements were met and where there is no evidence of a conspiracy between Stoelk and LFA ........................................................ 20

1. *Introduction* ...................................................................... 20
2. *Legal Standard* ................................................................. 22
3. *Evidence on the record undisputedly demonstrates Plaintiff had adequate notice of the scope of the charges against him, understood the policies he was allegedly in violation of, and was given a meaningful opportunity to be heard* .................................. 24
4. *Plaintiff does not defeat summary judgment by making broad, unsupported claims that the investigation was impartial or unfair because there is nothing impartial about an individual interviewing several witnesses and making conclusions related to that testimony* ............................................................................ 32
5. *There is no conspiracy where there is no evidence to suggest Stoelk conducted his investigation with the motiving of finding enough evidence to terminate Plaintiff's employment, or that he Participated in the due process proceeding* ..................................... 34

III.    Stoelk and Stoelk Investigation did not owe Merrill a duty of care necessary to establish a viable negligence claim .......................... 38

1. *Introduction* ...................................................................... 38
2. *Onita Pacific Corp. v. Trustees of Bronson further supports dismissal of Plaintiff's negligence claim because Merrill's claim is for purely economic losses* ............................................... 40

IV.    The District Court's ruling concerning Discovery of communications between Stoelk and Diana Moffat are not subject for review because Plaintiff did not properly object to the Magistrate Judge's ruling ...................................................... 44

CONCLUSION ............................................................................ 45

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                     <u>Pages</u>

*ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1077 (9th Cir. 2015)...............29-30

*Bradford v. Union Pacific R.R. Co.*, 872 F. Supp. 2d. 912 (2012).............. 32

*Brewster v. Board of Educ. of Lynwood Unified School Dist.*,
    149 F.3d 971 (9th Cir.1998) .................................................................. 23

*Campidoglio LLC v. Wells Fargo & Co.*,
    870 F.3d 963 (9th Cir 2017) .................................................................. 19

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985) ....................................................24, 26-28, 31, 37

*Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) ....... 36

*Gilbert v. Homar*, 520 U.S. 924 (1997) ...................................................... 24

*Granewich v. Harding*, 329 Or 47 (1999) .................................................... 22

*Hale v. Groce*, 304 Or 281, 744 P.2d 1289 (1987) ...................................... 41

*Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893,
    47 L.Ed.2d 18 (1976) ....................................................................... 23, 25

*Morasch v. Hood*, 232 Or App 392, 222 P.3d 1125
    (Or. Ct. App. 2009) ......................................................................... 22, 37

*Onita Pacific Corp. v. Trustees of Bronson*,
    315 Or 149 (1992) ....................................................2, 15, 18, 39-44, 46

*Orloff v. Cleland*, 708 F.2d 372 (9th Cir.1983) .......................................... 23

*Osborne v. Fadden*, 225 Or App 431, 201 P.3d 278, rev. den.,
    346 Or 213, 208 P.3d 963 (2009) ........................................................ 22

<u>Cases</u>                                                                                    <u>Pages</u>

*Pavel v. University of Or.*, 6:16-cv-00819-AA, 2017 WL 1827706
    (D. Or., Eugene Div. April 3, 2017)  ................................................28-29

*Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811 (9th Cir. 2021)  ........................ 19

*Sutton v. Providence St. Joseph Medical Center*,
    192 F.3d 826, 835 (9th Cir.1999)  ........................................... 36

*Thrifty Oil Co. v. Bank of America Nat. Trust*, 332 F.3d 1039
    (9th Cir. 2003)  ......................................................................... 19

*United States v. Richey*, 632 F.3d 559 (9th Cir. 2011)  ............................... 20

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    865 F.2d 1539 (9th Cir. 1989)  ................................................ 36

<u>Statutes</u>

28 U.S.C. § 1291....................................................................................... 2

28 U.S.C. § 1331....................................................................................... 2

28 U.S.C. §1367 ....................................................................................... 2

ORS 164.043 ........................................................................................... 10

ORS 166.065 ........................................................................................... 10

ORS 242.796 ........................................................................................... 11

<u>Rules</u>

Fed. R. Civ. P. 4(a)(1)(A) ........................................................................ 2

FED. R. CIV. P. 72(a) ........................................................................ 19, 45

iv

<u>Other Authorities</u>                                             <u>Pages</u>

Fourteenth Amendment ................................................................... 22

Restatement (Second) of Torts § 552 .....................................42-43

## INTRODUCTION

This appeal arises out of alleged wrongful termination, deprivation of rights and defamation claims submitted by Appellant Larry Merrill ("Plaintiff" or "Merrill") against his former employer, Lane Fire Authority ("LFA").  Plaintiff also asserted claims against Craig Stoelk and Stoelk Investigation and Consultation, LLC ("Stoelk" or "Stoelk Investigation"), including allegations that Mr. Stoelk conspired to terminate Mr. Merrill wrongfully and violated his civil rights, in addition to a claim for common-law negligence.  Defendants Stoelk and LFA both filed motions for summary judgment.  Upon review of all the pleadings and after oral argument, District Court Magistrate Judge Mustafa T. Kasubhai issued Findings and Recommendation granting Defendants' motions for summary judgment and dismissing each of Plaintiff's claims against both Defendants.  Plaintiff filed timely objections to the Findings and Recommendation.  District Court Judge Michael McShane subsequently adopted Judge Kasubhai's Findings and Recommendation and entered judgment in Defendants' favor.  Plaintiff now appeals.  Defendants Craig Stoelk and Stoelk Investigation now submit this brief in support of affirmance of the District Court's judgment and dismissal of Plaintiff's claims.

## JURISDICTIONAL STATEMENT

This lawsuit was originally filed in the United States District Court for the District of Oregon, Eugene Division.  The District Court had subject matter

jurisdiction of the federal due claims pursuant to 28 U.S.C. § 1331, Federal Question, and over the remaining claims pursuant to 28 U.S.C. §1367. This Court has jurisdiction of this appeal from a final judgment disposing of all parties' and claims pursuant to 28 U.S.C. § 1291 because the District Court entered final judgment for Defendants on August 17, 2022, and there are no other matters pending before the District Court. Plaintiff timely filed a Notice of Appeal on September 16, 2022, pursuant to Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUES

1. Did the District Court err in granting Defendants Stoelk and Stoelk Investigation's motion for summary judgment against Plaintiff's wrongful termination and deprivation of rights conspiracy claims?

2. Did the District Court err in finding Plaintiff's negligence claim was barred by *Onita Pacific Corp. v. Trustees of Bronson*?

## STATEMENT OF THE CASE

### 1. Introduction

This is a wrongful termination, deprivation of rights, defamation and negligence case filed by Plaintiff Larry Merrill following the termination of his employment from Defendant Lane Fire Authority. Following allegations of workplace harassment, LFA initiated an investigation of the allegations against Plaintiff. As part of that investigation, LFA retained Stoelk Investigation to conduct

a series of interviews. The investigation revealed numerous corroborated claims of sexual harassment perpetrated by Plaintiff upon several female coworkers. The results of the investigation were provided to Merrill as was a written notice of a hearing. The pre-disciplinary hearing was held by Chief Ney, in which Merrill and his counsel were provided an opportunity to respond to the allegations against him. Ultimately, LFA decided to terminate Merrill's employment. Merrill subsequently filed a lawsuit in federal court, asserting claims that the procedure LFA employed to terminate his job violated his due process rights and was not impartial. More specifically, he alleges the scope of Stoelk's investigation was too broad, that he did not have an adequate hearing and opportunity to be heard regarding the allegations, and that LFA made the disciplinary decision before the hearing even occurred. Merrill also alleges the investigation completed by Stoelk and Stoelk Investigation was conducted negligently, but not because there were failures to interview relevant witnesses or gather other evidence. Instead, Merrill claims the investigation was too thorough and was not limited to the current allegations. Merrill also asserts a defamation claim against Defendant LFA. The District Court correctly concluded that Merrill's claims were unsupported by applicable law and dismissed his lawsuit. Merrill now appeals. The following facts are undisputed.

### 2. Events Leading to Termination Proceedings

In 2007, Larry Merrill was hired by Lane Rural Fire and Rescue, which later became LFA, as a firefighter/paramedic. ER-735-36. Ten years later in September 2017, Merrill was assigned to the same shift and ambulance as Whitney Hutcheson-Warren ("Hutcheson-Warren"), a trainee paramedic/ firefighter. ER-295. In May 2021, Hutcheson-Warren sent Merrill a text asking if she could use him as a reference for a job application. ER-36, 38. After Merrill agreed to be a reference, Hutcheson-Warren responded, "Thank you! You're awesome." ER-38. Merrill then responded "So are you whit [Whitney]. And stinking cute and sexy just saying sorry hope it's not to (sic) much or crossing a line." ER-39. Hutcheson-Warren responded to that exchange saying, "Hey Larry. I just wanted to say that I don't appreciate the way you were talking to me earlier. I have fun working with you and I don't want to feel uncomfortable at work. I don't want to see you get in trouble." ER-39.

After the texts were sent, Hutcheson-Warren showed the messages to Lt. Matt Snauer, who then reported the incident to Chief Borland and Captain Bob Colwell. ER-284-86. The allegation also eventually reached the Fire Chief, Terry Ney. ER-285. Chief Ney learned that the incident with the text messages may have not been an isolated event, leading the fire station to arrange an independent investigation of the incident. ER-279. On May 15, 2018, Mr. Merrill was placed on paid

administrative leave while the investigation was pending. ER-333. The letter states in pertinent part:

> "Engineer/Paramedic Merrill:
> Effective immediately, you are on paid administrative leave until further notice. This leave is non-disciplinary in nature and is _pending an investigation for sexual harassment in the workplace_." (emphasis added). *Id*.

The letter went on to instruct Merrill that he was not to contact other employees or enter district properties, and that he would "be contacted by an independent investigator as soon as it can be arranged." ER-336. Finally, the letter indicated that the labor union had been notified of Merrill's placement on administrative leave, and that "no disciplinary action would be taken without notice and a pre-disciplinary meeting." *Id*. Merrill testified that he received the May 15, 2018, letter, reviewed it, and understood he was being placed on administrative leave pending an investigation of sexual harassment. ER-147-48, 151.

### 3. Investigation of Allegations

In order to investigate the allegations and to make an informed decision about the proper disciplinary actions to take, LFA retained Craig Stoelk and Stoelk Investigations to review the allegations further. ER-452. Stoelk was apprised of the allegations by Chief Ney, who informed him that a female employee had reported receiving unwanted text messages from Merrill. *Id*. In preparing to begin the interview, Stoelk requested Chief Ney identify individuals who may have interacted

with Merrill, to which Chief Ney forwarded a list of employees via email who, based upon recent schedules, may have had contact with Plaintiff, both regularly and infrequently. ER-77. At no point in this email exchange does Chief Ney explicitly instruct Stoelk to perform certain interviews, or avoid others, or inform Stoelk that he is only permitted to interview the individuals identified in that email. ER 76-77. There is no evidence Chief Ney communicated to Stoelk that it was his goal or the goal of LFA to terminate Merrill's employment. There is no evidence Chief Ney instructed Stoelk to interview certain people or pursue certain information. There is no evidence Chief Ney instructed Stoelk to expand or limit his investigation in order to achieve sufficient evidence that could justify Merrill's termination from employment.

Stoelk conducted twelve interviews of both former and present LFA employees: Merrill's ex-wife, Merrill's union steward, and other individuals who had had interactions with Merrill. ER-280. He first interviewed Hutcheson-Warren, who recounted the text message exchange that began with her requesting to use Merrill as a reference and ended with him sending a text calling her "cute" and "sexy." ER-281. Hutcheson-Warren eventually responded that she did not appreciate the message. *Id*. Merrill then repeatedly apologized and expressed concern about being terminated for the messages. *Id*. Hutcheson-Warren told Stoelk she was not sure why Merrill sent the messages because she did not socialize with

Mr. Merrill outside of work and did not flirt with him, and eventually she showed the text messages to Lt. Snauer, her supervisor. ER-280-81.

Hutcheson-Warren described other unwelcome interactions with Merrill prior to the text message exchange in her interview. She stated he frequently made comments about what other women were wearing while out in an ambulance with Merrill, that he frequently bragged about cheating on his wife, that he lost his virginity at an early age, repeatedly asked her about her sex life and history, and had on several occasions feigned spanking her. ER-282-83.

Stoelk interviewed Lt. Snauer, Hutcheson-Warren's supervisor. He told Stoelk he had knowledge of Merrill's past behaviors and consequently always made it a point to check in on Hutcheson-Warren. ER-284. Hutcheson-Warren first reported the text messages to Lt. Snauer, who in turn shared the information with Chief Ney, Capt. Colwell, Chief Borland and Katie Johnson, the union steward, to prompt further investigation. ER-285-86. Capt. Colwell was also interviewed by Stoelk. Capt. Colwell reported to Stoelk that Merrill had previously texted sexually graphic photographs to his now wife. ER-286-87. Colwell also informed Stoelk about another complaint raised about Merrill several years prior in which he stole a female co-worker's underwear from the station laundry room. *Id*. This led to an interview with that female employee, Megan Jozwiak. Jozwiak, who used to work the same shift as Merrill, informed Stoelk she had heard what had happened to

Hutcheson-Warren and decided to talk to her to give her support given her own personal experiences with Merrill. ER-288. She shared with Stoelk she would do her laundry in the communal laundry room and find her dirty underwear missing from her hamper or the washer and heard from another co-worker that Merrill's wife found the underwear in his gym bag. ER-289.

Stoelk then interviewed Christine Hollett and Merrill's ex-wife, Mary Sjogren. Hollett stated she and her husband had socialized briefly with Merrill on a few occasions but discontinued that. ER-290. One of these occasions was a camping trip, in which she witnessed Merrill kissing a woman that was not his wife. *Id*. She described Merrill as a womanizer. *Id*. Hollett also stated that when she worked with Merrill he made numerous sexually explicit comments to her and had unwanted physical contact with her. *Id*. She recalled the conversation with both Sjogren and Jozwiak about the missing underwear and corroborated Jozwiak's story. ER-290-91. Sjogren similarly told Stoelk about finding women's underwear in Merrill's locker/gym bag, effectively corroborating those events. ER-292. She also informed Stoelk that Merrill initially lied about where he obtained the underwear and was able to get Merrill to admit he was lying. ER-292-93.

Stoelk also interviewed three other individuals who had knowledge of Merrill's troubling behaviors: (1) Captain Colwell's wife, Jessica Topel; (2) a woman who previously had a relationship with Merrill named Jennifer Wilson; and

(3) another former firefighter named Jesse West.  Topel informed Stoelk that she had received an unsolicited image from Merrill that "depicted a penis," as well as other unsolicited texts that were sexual in nature.  ER-294.  Wilson described Merrill as someone "who had a reputation at work involving women and it was quite apparent to her that view was not just rumor." ER-300.  She acknowledged she previously had a relationship with Merrill in 2012 and they had engaged in sexual relations at the fire station.  ER-300-01. She also told Stoelk she regretted having the relationship, even though it was brief.  *Id*.  West informed Stoelk he was aware that Wilson and Merrill had sex while at the fire station, thus corroborating Wilson's statements.  ER-302-03.

Stoelk interviewed Merrill on two separate occasions in the presence of his union steward, Rodney Stewart.  When asked about the text message sent to Whitney, Merrill stated he meant to send the text to his wife.  ER-295.  He stated he had problems in the past with text messages being sent to the wrong recipient.  ER-296.  When asked about the other instances of harassment that Hutcheson-Warren had mentioned in her interview (such as the commentary on other women's clothes or asking about her sex-life), he stated he could not recall those events.  ER-296-97. Merrill also denied taking Ms. Jozwiak's underwear, telling Stoelk he did not recall such events taking place.  ER-297-98.

Stoelk wrote a 40-page report summarizing the various interviews he conducted and of his investigation of the sexual harassment claim and provided his analysis of the information obtained during these interviews. ER-452. Ultimately, Stoelk concluded Merrill had sexually harassed Hutcheson-Warren at work. ER-307-08. He did not find Merrill's excuse that his phone indiscriminately sent messages credible, as Merrill presented no evidence of discussing those issues with Apple (the manufacturer of his phone). *Id*. Stoelk also reported that the numerous accounts of womanizing and inappropriate behavior discredited Merrill's account of the event, as well as the fact that his ex-wife caught him lying about lewd behavior. ER-308-14. In the end, Stoelk concluded Merrill violated a number of LFA polices prohibiting sexual harassment and created a hostile work environment. ER314-15. Stoelk also concluded Merrill had "engaged in behaviors that if reported to law enforcement would constitute criminal acts, including harassment and theft" (ORS 166.065 and 164.043). ER-315-17. Though Stoelk's report makes findings based on the various interviews Stoelk conducted, his report does not make recommendations to LFA on which disciplinary measures are appropriate or that LFA should pursue. The report was submitted to Chief Ney. ER-452. Between the time Stoelk submitted the report to Chief Ney, there is no evidence Stoelk or Chief Ney communicated or discussed the findings of Stoelk's report, nor any evidence

that Stoelk made disciplinary recommendations to Chief Ney regarding Merrill's future employment with LFA. ER-420-21.

### 4. Termination Proceedings

ORS 242.796 identifies the specific circumstances in which a firefighter can be dismissed from his or her position. Furthermore, LFA's personnel manual dictates that no employee can be discharged or disciplines except for "just cause." ER-429. The policy goes on to state:

> "In the event the District believes a member may be subject to discipline greater than suspension, with pay, the following due process measures will be followed:
>
> 1. The member will be notified in writing of the charges or allegations that may subject them to discipline.
>
> 2. The member will be notified in writing of the disciplinary sanction being considered.
>
> 3. The member will be given an opportunity to refute the charges or allegations either in writing or orally in an informal hearing with the Chief to be held not less than 10 days from the date the notice is received.
>
> 4. The Chief will consider the employee's presentation and will act on the charges or allegations in writing within 14 calendar days." ER-430.

On June 5, 2018, following the completion of Stoelk's investigation, Merrill was presented with a Notice of Pre-Disciplinary/Due Process Meeting and a copy of Stoelk's investigative report. ER-337. Merrill testified the letter gave him notice of the scope of the allegations against him, advised him when the pre-disciplinary

hearing that would take place and his rights to attend the meeting and refute the charges against him. ER-151-53. The Notice of Pre-Disciplinary/Due Process Meeting informs Merrill that the proposed disciplinary action is termination for violation of four LFA policies and two Oregon criminal statutes. ER337-38. The Notice further informs Merrill he had the right to respond to the allegations, he had the right to attend the meeting with a union representative, his attendance at the meeting was not required, and should Merrill wish to respond to the allegations (either orally or in writing) the Chief would take those comments into consideration before making a final disciplinary decision. *Id*. Merrill testified he understood that each of these rights was available to him at the Pre-Disciplinary/Due Process meeting. ER-137-42.

A Pre-Disciplinary/Due Process Meeting was held on June 29, 2018, and was attended by Merrill, his attorney, Rodney Stewart, Chief Ney and Diana Moffat, the representative of the Local Government Law Group. ER-422-23. Merrill also provided his own testimony in response to the allegations against him. ER-222. After seeing the results of Stoelk's investigation, hearing testimony from Merrill, and after completion of the hearing, Chief Ney decided to terminate Merrill's employment. ER-59, 410. The decision was based on Merrill's failure to present evidence refuting the findings of Stoelk's report and failure to take any responsibility for what had happened. ER-59, 411. The meeting ended with Merrill's termination,

and Merrill was presented with a letter implementing that disciplinary action.  *Id*.;

ER-428.  In relevant part letter states:

> "Pursuant to the parties Collective Bargaining Agreement, you and your union representative met with me today for your opportunity to provide. Me with any mitigating factors that I should consider prior to the imposition of discipline.
>
> Following that meeting, I have determined that the appropriate level of discipline in this matter is termination of your employment with the Lane Fire Authority.  I find evidence that you have conducted yourself in violation of the following:
>
> - LFA Policy 2.4 Discipline
> - LFA 2.1 Standards of Conduct
> - LFA 2.2 Workplace Harassment/Sexual Harassment
> - LFA Policy 2.3 Violence Free Workplace
> - ORS 166.065 Harassment
> - ORS 164.043 Theft in the third degree." *Id.*

Following Merrill's termination, on July 25, 2018, Merrill's union, IAFF

Local 851, filed a union grievance disputing the discipline ultimately instituted.  ER-

610.  The union **did not** grieve the disciplinary process implemented by LFA that

led to Merrill's termination or allege violations of Merrill's due process rights.  *Id.*

Ultimately, the union determined there were no issues with the procedure

implemented by LFA during the termination process and decided not to pursue

arbitration by allowing the deadline to pass.  ER-359-63, 381, 387-88.  Furthermore,

Mr. Stewart testified that the process by which Merrill's termination proceeded,

including delivery of a notice letter, subsequent investigation, delivery of notice of the Pre-Disciplinary Hearing and subsequent meeting, all fell within the typical disciplinary process. ER-363-64.

### 5. Procedural History

Merrill filed the present lawsuit in District Court on June 18, 2020. ER-735-44. More specifically, Merrill alleges Stoelk and Stoelk Investigation acted as co-conspirators with LFA to bring about Merrill's termination, resulting in claims for Wrongful Termination and Deprivation of Rights. ER-738-40. Merrill also asserted Stoelk negligently conducted its investigation, thus giving rise to a common law negligence claim. ER-741.

Defendant LFA filed its motion for summary judgment on November 9, 2021. ER-702-20. During this time, a discovery dispute arose between Plaintiff and Defendant LFA concerning whether communications between Chief Ney and Diana Moffat and Defendant Stoelk were considered privileged and, therefore, non-discoverable. The District Court requested additional briefing on the issue. ER-754. Defendants Stoelk and Stoelk Investigation filed their motion for summary judgment on December 30, 2021. ER-468-508. In summary, Defendants Stoelk Investigation and Craig Stoelk argued that the record did not support a finding that Merrill had been wrongfully discharged from his employment at LFA, nor did the record support a finding that his Due Process rights had been violated. *Id*. Their motion went on

to argue that even should the District Court find that an issue of fact arose defeating this argument, there was still no evidence on the record to suggest that a conspiracy between LFA and Stoelk took place, and thus the District Court should still dismiss all conspiracy claim against Stoelk Investigation and Craig Stoelk. *Id*. Regarding the negligence claim, Defendants Stoelk and Stoelk Investigation argued they did not owe Stoelk a legal duty, thus defeating his negligence claim, and furthermore argued that the case of *Onita Pacific Corp. v. Trustees of Bronson,* 315 Or 149, 165 (1992), precluded recovery. *Id*.

Oral argument was heard on February 24, 2022. ECF-62. On March 17, Magistrate Judge Kasubhai issued an order finding that Stoelk's communications with Diana Moffat and Chief Ney were privileged and non-discoverable because Stoelk was acting as attorney Moffat's representative. ER-31. Soon thereafter, Magistrate Judge Mustafa T. Kasubhai issued Findings and Recommendation on July 19, 2022, granting Defendants' motions for summary judgement and dismissing each of Plaintiff's claims. ER-6-30. Regarding the Wrongful Termination and Deprivation of Rights claims, the court found that the process employed by LFA satisfied all of the constitutional protections afforded to public employees to safeguard their employment. More specifically, the Magistrate Judge found that the evidence on the record provided sufficient proof that (1) Merrill had "received written notice of paid administrative leave pending an investigation into sexual

harassment allegations;" (2) that Merrill understood the scope of the allegations and the charges against him; (3) that Merrill obtained copies of LFA's evidence supporting the allegations against him when he received a copy of Stoelk's report; (4) that Merrill knew before his Disciplinary Hearing the specific employment policies and statutes that he allegedly violated; and (5) that Merrill was given a sufficient opportunity to present his version of events, respond to the allegations, and offer his own evidence refuting those claims," thus satisfying all of LFA's obligations to Merrill prior to his dismissal from employment. ER-18-19. Magistrate Judge Kasubhai also concluded there was no evidence on the record supporting a claim for conspiracy, noting that, "[a]t best, the record shows Chief Ney had concerns about the cost of the investigation. But Plaintiff points to no evidence demonstrating that Chief Ney did in fact interfere with the investigation other than his conclusory assertion to the contrary." ER-21. Finally, the court found Plaintiff failed to establish a special relationship between Plaintiff and Stoelk Investigation as required by *Onita*, and Plaintiff's response to Stoelk's summary judgment failed to respond to such arguments. ER-29.

District Court Judge Michael McShane subsequently adopted Judge Kasubhai's Findings and Recommendation and entered judgment in Defendants' favor on August 17, 2022. ER-3-4. Plaintiff then timely filed a notice of appeal. ER-745-47.

## SUMMARY OF THE ARGUMENT

This lawsuit arises from an incident in the Plaintiff's workplace, which ultimately led to an investigation of various allegations and Plaintiff's eventual termination from employment at Lane Fire Authority. Plaintiff Larry Merrill alleges he sustained damages from Defendant Craig Stoelk and Stoelk Investigation and Consultation, LLC because Mr. Stoelk conspired with Lane Fire Authority to wrongfully terminate his employment and to deprive him of his constitutionally protected rights. Mr. Merrill also contends Mr. Stoelk negligently conducted the investigation that was used by Lane Fire Authority as grounds for his termination. The District Court reviewed motions for summary judgment submitted by all Defendants in this matter, and ultimately granted each of the motions, finding that the claims failed as a matter of law. Plaintiff, now appealing that decision, continues to make many of the same arguments that the District Court dismissed at summary judgment. Merrill argues he was not given appropriate notice of the allegations against him because he was not aware of the scope of the entire investigation until June 5, 2018, when he received a letter setting a pre-disciplinary hearing. He also argues he was not given an opportunity to be heard because Chief Ney arrived at the hearing with a prepared termination letter and makes sweeping conclusory statements that the investigation performed by Stoelk was unfair. This level of oversight and particularity of the due process proceedings is not something that is

supported in any legal authority and extends beyond the reach of constitutional protections that courts have contemplated when evaluating cases of this type. Not only does Plaintiff offer no authority suggesting that the alleged deficiencies in the process are sufficient to render the entire termination proceedings unconstitutional, but he also fails to point to any evidence to suggest there was some express or implied conspiracy between Mr. Stoelk and Lane Fire Authority to terminate his employment. In other words, even if these issues of fact amounted to a constitutional violation, there is no evidence to suggest Mr. Stoelk shared a common objective with Lane Fire Authority to find evidence sufficient to fire Mr. Merrill such that he has a viable conspiracy claim against Stoelk and Stoelk Investigation.

Not only do Mr. Merrill's conspiracy claims fail as a matter of law, but so do his negligence claims against Stoelk Investigations. Mr. Merrill cannot identify any evidence to suggest Stoelk Investigations owed a duty to Mr. Merrill because Stoelk Investigation was an adversarial party who had no obligations to protect the interests of Mr. Merrill. Furthermore, the District Court rejected Plaintiff's negligence claim on the premise that the case *Onita Pacific Corp. v. Trustees of Bronson* precluded recovery on a negligence theory. Plaintiff fails to address these issues, which were the root of these Defendants' objection to the negligence claim. For all of these reasons, each of which will be discussed in greater detail below, summary judgment is appropriate in this case, and Plaintiff's claims against Craig Stoelk and Stoelk

Investigations should be dismissed. Defendants Stoelk and Stoelk Investigation respectfully request this Court uphold the ruling of the District Court and find that each of Merrill's claim fail as a matter of law.

## ARGUMENT

### I. Standard of Review

On appeal, a district court's decision to grant summary judgment is reviewed de novo. *Thrifty Oil Co. v. Bank of America Nat. Trust*, 332 F.3d 1039, 1046 (9th Cir. 2003). The appellate court, on review, must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law, all while viewing the evidence in the light most favorable to the non-moving party. *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021). Summary judgment may be affirmed on any ground supported by the record before the court. *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 973 (9th Cir 2017).

Though the discovery issue raised in Plaintiff's briefing pertains to a discovery dispute between Plaintiff and Defendant LFA, Defendants Stoelk and Stoelk Investigation join LFA's argument that Fed. R. Civ. P. 72(a) precludes review of this issue because Plaintiff failed to file objections with the assigned district court judge. Should this Court find otherwise, this Court should review the Magistrate Judge's ruling on the discovery issue *de novo* given the issue involves mixed

questions of law and fact, and that any factual findings are reviewed for clear error.

*United States v. Richey*, 632 F.3d 559, 563 (9th Cir. 2011).

## II. The District Court's dismissal of Plaintiff's wrongful termination and deprivation of rights claim was proper where the evidence shows that the minimum due process requirements were met and where there is no evidence of a conspiracy between Stoelk and LFA

### 1. *Introduction*

The District Court was correct in concluding that Plaintiff's wrongful termination and deprivation of rights claims failed as a matter of law because the record unambiguously demonstrates that LFA adhered to all appropriate procedures designed to protect a public employee's property interest in their employment, and even if there was an issue of fact regarding the adequacy of those procedures, the record is void of any evidence suggesting Stoelk colluded with LFA to undermine Merrill's constitutional rights.

In his appeal, Plaintiff assigns error to the District Court's ruling as it relates to claims against either Stoelk or Stoelk Investigation on three grounds: that (1) he was not provided notice the investigation was expanded in scope to include allegations of other instances of harassment, (2) his employment was terminated without having the opportunity to be heard at the pre-disciplinary hearing, and (3) that the investigation was unfair or impartial.[1]  Upon review of the record, the

---

[1] There are also assignments to error related to the District Court's dismissal of Merrill's defamation claim against Chief Ney, however, that claim is not directed

evidence shows Plaintiff was provided a notice that he was being placed on administrative leave pending an investigation of claims of sexual harassment. ER-333. It also demonstrates Merrill understood the reasons for being placed on leave. ER-147-48, 151. There is also evidence in the record that Merrill received notice of a pre-disciplinary hearing, was informed of his rights at that hearing, and was provided with a copy of the investigative report authored by Stoelk. ER-337. Finally, the only evidence in the record is that Merrill understood his right to be heard at his pre-disciplinary hearing and, in fact, provided testimony at that hearing. ER-151-53. Thus, there is no issue of material fact that Merrill was afforded all the required due process procedures – including having adequate notice and an opportunity to be heard – before his termination went into effect. As a result, the District Court correctly granted both Stoelk/Stoelk Investigation's and LFA's motions for summary judgment on the basis that Merrill's due process rights were not violated. The District Court also correctly found that the evidence on the record did not demonstrate signs of interference or collusion between Stoelk and LFA to undermine these rights, and thus no conspiracy occurred. Stoelk and Stoelk Investigation now respectfully request this Court affirm the ruling of the District

---

at Defendants Stoelk or Stoelk Investigation, and therefore, they are not addressed here.

Court and dismiss Plaintiff's Wrongful Termination and Deprivation of Rights claims.

*2. Legal Standard*

Merrill alleges Stoelk acted as a co-conspirator with LFA in order to wrongfully terminate his employment at LFA and deprive him of his constitutional rights. Under Oregon law, a civil conspiracy is not an independent tort, but instead allows the plaintiff to impute the acts of the members of the conspiracy onto each member for purposes of imposing liability. *Granewich v. Harding*, 329 Or 47, 53 (1999). Thus, to achieve a civil conspiracy claim, a plaintiff must demonstrate five elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as a result of the overt act or acts." *Morasch v. Hood*, 232 Or App 392, 402, 222 P.3d 1125 (Or. Ct. App. 2009) (*citing Osborne v. Fadden*, 225 Or App 431, 437, 201 P.3d 278, rev. den., 346 Or 213, 208 P.3d 963 (2009)). Under this framework, it stands to reason that a conspiracy is not tortious unless the underlying act itself is tortious. Therefore, there can be no liability imposed on a co-conspirator unless each of the elements of the underlying tort exist. Such is not the case here.

The Fourteenth Amendment prohibits a public entity from depriving "any person of life, liberty, or property, without due process of law." Stoelk and Stoelk Investigations do not dispute Merrill had a property interest in his employment with

LFA. However, when asserting a due process violation for the wrongful deprivation of property rights, a plaintiff must show that an employer denied adequate procedural protections. *See, e.g., Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 982, 983 (9th Cir.1998). The determination of what procedural protections are considered adequate requires an analysis of the case under a three-part balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see also Orloff v. Cleland*, 708 F.2d 372, 378–79 (9th Cir.1983).

> "First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 335.

In this case, there is no evidence demonstrating Merrill was wrongfully terminated or that the process pursued by LFA to reach that end was constitutionally invalid. However, even if this court finds there is an issue of fact as to whether Merrill was wrongfully terminated, there is still no evidence that a meeting of the minds took place between Stoelk and LFA. Consequently, there is no issue of material fact regarding Merrill's wrongful termination or deprivation of rights claims

against Stoelk and Stoelk Investigation, and the District Court was correct in ruling that those claims should be dismissed as a matter of law.

3. _Evidence on the record undisputedly demonstrates Plaintiff had adequate notice of the scope of the charges against him, understood the policies he was allegedly in violation of, and was given a meaningful opportunity to be heard_

Plaintiff's wrongful termination and deprivation of rights claims fail as a matter of law because evidence on the record clearly demonstrates he had full knowledge of the allegations against him and that after providing copies of all evidence LFA had access to, he was given an opportunity to provide his own testimony disputing those claims. As discussed above, when a public employee has a property interest in his or her employment, due process requires the employee receive adequate notice of the allegations against them and have an opportunity to be heard before their employment is terminated. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). The "constitutional minima [is] satisfied where the employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits." *Id*. at 542. Such process acts as an initial check upon the employer for potential mistaken decision, *see e.g. Gilbert v. Homar*, 520 U.S. 924, 929 (1997), however, to require more cuts against the government's interest in swiftly removing unsatisfactory employees. *Cleveland Bd. of Educ*, 470 U.S. at 546. In short, the need for an opportunity to refute charges and a hearing is necessary in order to balance the competing interests

involved: the individual's interest in maintaining employment and the government's interest in removing undesirable employees without excessive administrative burdens. *Id.* at 542-43 (citing *Matthews*, 424 U.S. at 335). A pre-termination hearing finds a compromise between those competing interests because it allows the employee to present their side of the story, it is not overly burdensome to the employer, and it can help avoid erroneous termination. *Id*. at 543-44.

While it is clear that due process requires notice and a pre-termination hearing, the Supreme Court further held that such a hearing "need not be elaborate." *Id*. at 545. In general, "'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id*. (*citing Matthews*, 424 U.S. at 343). While the sufficiency of process and the formality of a hearing can vary depending on the circumstance of each case, the pre-termination hearing does not need to "definitively resolve the proprietary of the discharge," because it acts as "an initial check against mistaken decisions – essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id*. at 545-46. The Supreme Court has further explained that:

> "The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require

> more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Cleveland Bd. of Educ*, 470 U.S. at 546 (internal citations omitted).

Under the Supreme Court's analysis, it is clear LFA exceeded the minimum requirements of due process as defined in *Cleveland Bd. of Educ. V. Loudermill*, and the arguments Plaintiff continues to make on appeal are contradicted by the evidence on the record. Plaintiff first argues he was not given proper notice of the allegations against him and the reasons for his termination. More specifically, Plaintiff argues he was not notified of the scope of the allegations, which included allegations as far back as 2007, and therefore he was not provided a meaningful opportunity to respond to those allegations. These arguments are illogical on their face upon review of the record. Merrill was first given notice of the allegations on May 15, 2018, when he was provided a letter that he was being placed on administrative leave "pending an investigation for sexual harassment in the workplace." ER-336. He was then given a letter on June 5, 2018, that included Stoelk's investigative report, identified the policies for which he was charged with violating, and was notified that a pre-disciplinary hearing was being set for June 29, 2018 (ER-337-38). These two letters undoubtedly provided Plaintiff with "written notice of the charges against him," included the complete report that was "an explanation of the employer's evidence," and gave him over three weeks to review those materials, prepare a response and appear at a hearing in which he would have "an opportunity to present his side of the

story." *Cleveland Bd. of Educ*, 470 U.S. at 546. Not only do these two letters confirm that Plaintiff was afforded the appropriate notice and an opportunity to be heard, but Plaintiff's own deposition testimony confirms he received these letters and understood their contents. ER-151. There is also sufficient evidence on the record demonstrating Plaintiff attended his pre-disciplinary hearing and presented a response to the allegations. ER-222.

Plaintiff's argument that he was not given proper notice appears to rest on the notion that he was not provided notice of the allegations against him beyond the text message exchange with Ms. Hutchinson-Warren *during* Stoelk's investigation. Opening Br. P. 30. Even if this is true[2], there is clear evidence on the record that he did receive full notice of these allegations by at least June 5, 2018, and that notice was provided well in advance of his pre-disciplinary hearing. Plaintiff offers no authority that LFA was required to provide notice of such allegations earlier than it did, nor does it logically make much sense. Plaintiff was placed on administrative leave "pending an investigation;" at the time LFA took that action, Chief Ney and other supervisors could not have predicted the full scope of what would have been

---

[2] Arguably, such an argument is also refuted by the evidence given that Merrill participated in Stoelk's investigation, was interviewed by Stoelk, and was questioned about the other allegations of sexual misconduct in the workplace, which reasonably would have put him on notice of the additional reports of harassment that LFA might consider as part of its disciplinary analysis. ER-292-97.

uncovered, if additional violations would have been found, or that such misconduct pre-dated the incident giving rise to the investigation. The idea that LFA should have been required to give Merrill notice of the full scope of the allegations before having an opportunity to investigation the matter themselves is unreasonable and is not supported by any relevant authority. Again, the minimum requirements that an employer must adhere to in order to satisfy due process consists of notice, an informal hearing prior to a final employment disciplinary decision and an opportunity for the employee to meaningfully respond. *Cleveland Bd. of Educ.*, 470 U.S. at 546. Each of those elements was undisputedly met.

Plaintiff relies on *Pavel v. University of Or.*, 6:16-cv-00819-AA, 2017 WL 1827706 (D. Or., Eugene Div. April 3, 2017), to support his allegation that proper notice was not provided. This case is distinguishable from the present case. In *Pavel*, a university professor was placed on leave following allegations from several students of sexual harassment. *Id*. at *1. Approximately three weeks later, representatives of the university met with Plaintiff to discuss their "suspicion that plaintiff appeared to engage in a pattern of sexual harassment and interviewed him to collect additional information." *Id*. Plaintiff was then informed by the university that he was free to provide any additional information or evidence on the matter, which plaintiff never did. *Id*. A few weeks later, several staff members of the university met with plaintiff and determined plaintiff had violated policies against

29

sexual harassment and findings of that investigation were provided to plaintiff in writing. *Id*. They also informed plaintiff they intended on terminating his employment, but that he had an additional four days to respond to the allegations. *Id*. Plaintiff asked for more information about the allegations, which the university refused to provide. *Id*. Plaintiff argued there were a number of deficiencies with the University's process, but importantly pointed out that, despite his request, he was not provided copies of the student complaints against him. *Id*. at *5. The District Court noted that "broad summaries of allegations do not always provide sufficiently meaningful opportunity to respond to the evidence, particularly where the government declines to provide crucial details and asserts that the allegations come from confidential sources. *Id*. at *6 (internal quotations omitted). In that case, where the plaintiff specifically requested additional information and where the university could have easily provided the complaint without undue burden, there was an issue of material fact that plaintiff was deprived of a meaningful opportunity to respond to the charges against him. *Id*.

Here, there is no evidence Merrill requested additional information, or that upon request he was informed that such information would not be provided due to confidentiality concerns. Indeed, the *Pavel* court does note that a summary of evidence may, "in certain circumstance, provide sufficient notice to allow a meaningful opportunity to respond." *Id*. (*citing ASSE Int'l, Inc. v. Kerry*, 803 F.3d

1059, 1077 (9th Cir. 2015).  Here, Plaintiff once again makes broad, conclusory statements that additional information would have improved his ability to meaningfully respond to the charges without identifying what the allegedly "crucial information" is.  Here, Merrill had the names and summaries of the version of events of each individual interviewed.  There was no "confidential evidence" that LFA relied upon to determine that termination was appropriate in this matter.  Mr. Stoelk generated a lengthy and detailed report of each interview he conducted without redacting the names of the witnesses or portions of the statements.  There is no identification of any additional evidence LFA supposedly relied upon that was not provided to Merrill.  There is no explanation why Stoelk's 40-page report provided by LFA was alone insufficient to adequately apprise Merrill of the scope of the allegations against him.  The report provided the who, what, where and when of the troubling allegations relating to Merrill's conduct.  Simply put, the *Pavel* case does not support a reversal of the District Court's granting of summary judgment.

Finally, Plaintiff also argues that Chief Ney had a termination letter prepared at the meeting and that somehow deprived Plaintiff of the opportunity to respond. However, Plaintiff cites no authority suggesting that coming prepared with a termination letter presents a genuine issue of material fact that demonstrates an employer made a disciplinary decision prior to engaging in a pre-disciplinary hearing, nor does this fact provide any conclusive evidence that Plaintiff himself was

precluded from providing a defense on his own behalf. The argument that an employer should not come prepared with a termination letter to a pre-disciplinary hearing – especially where there are serious allegations of sexual harassment in the workplace – cuts against the government's interest in expeditiously removing unsatisfactory employees and avoiding additional expenses of such proceedings. *Cleveland Bd. of Educ.*, 470 U.S. at 546. Having a termination letter ready and available does not establish an issue of material fact that Plaintiff was denied an opportunity to defend himself against the charges brought against him. This is especially true where the deposition testimony of Chief Ney indicates he would "consider not terminating [Merrill,] [b]ut nothing [he] heard at the meeting changed [his] opinion" about the sequence of events that necessitated an investigation and pre-disciplinary hearing. ER-59.

As noted above, Merrill's wrongful termination claim against Stoelk is that Stoelk conspired with LFA to violate Merrill's due process rights. However, such a conspiracy does not exist if the underlying tort is not actionable. In this case, LFA met their due process obligations through the process they followed to terminate Merrill. There is no underlying tort, and consequently no conspiracy on the part of Stoelk to perpetuate a tort. Merrill's wrongful termination claim should be dismissed as a matter of law.

4. _Plaintiff does not defeat summary judgment by making broad, unsupported claims that the investigation was impartial or unfair because there is nothing impartial about an individual interviewing several witnesses and making conclusions related to that testimony_

Plaintiff makes a number of arguments that various aspects of Stoelk's report create a question of fact regarding the impartiality of the investigation; however, these assertions fail to articulate what is precisely unfair or impartial about it. To briefly summarize, Plaintiff argues Stoelk's report is riddled with statements suggesting the impartiality of the investigation because (1) the investigation examined events that took place several years ago, (2) it includes inflammatory statements, (3) Stoelk concluded that some of the behavior could amount to criminal theft if it had been reported to law enforcement, and (4) the investigation violated portions of the collective bargaining agreement controlling Merrill's employment. Opening Br. P. 33-34. Merrill also makes broad, sweeping arguments that the testimony provided by the various witnesses had "no factual basis," _Id_. at p. 34, and included statements that reflected Stoelk's own opinions. _Id_. at p. 35. Again, however, there is ultimately no indication how these discrepancies infringed upon Merrill's constitutional rights or how they demonstrate proof of a conspiracy between Stoelk and LFA.

While it is true that an individual facing disciplinary action is entitled to a "fair and impartial investigation," _Bradford v. Union Pacific R.R. Co._, 872 F. Supp. 2d. 912 (2012), Plaintiff offers no explanation as to what exactly renders the

statements in Stoelk's report as unfair or biased. The conclusions in Stoelk's report were based on numerous interviews with several individuals who had interactions with Merrill. Merrill makes no assertion – let alone provides any evidentiary support – that the testimony provided by these witnesses was patently false, contradicted by other available evidence, or otherwise falsified. In fact, Plaintiff largely avoids disputing the testimony of the various witnesses and simply makes conclusory statements that their feelings, observations or inferences about events led to the creation of an unfair report. The District Court correctly held Plaintiff cannot simply create an issue of fact by making such sweeping arguments without something more to suggest the investigation was somehow rigged in order to ensure his termination. The fact that Stoelk came to negative conclusions about Plaintiff does not independently make the investigation unfair or impartial, and Plaintiff offers no evidence that suggests Stoelk made inaccurate conclusions about Plaintiff's behavior, misrepresented the information provided during the interviews or otherwise failed to conduct a fair investigation. In fact, there is no evidence that either Plaintiff or his counsel has ever interviewed, investigated or deposed the witnesses identified in Stoelk's report. Therefore, Plaintiff's sweeping contentions have not raised an issue of material fact that would allow a reasonable juror to conclude Plaintiff was wrongfully terminated.

Plaintiff does not provide any authority to suggest a public employer is precluded from engaging a private individual to participate in the investigation of allegations of workplace harassment, nor does he point to any authority indicating the inclusion of an investigator's interpretation or opinion of the evidence automatically renders the investigation impartial. Indeed, any investigation involving factual allegations, whether performed by a private individual or a public employer, requires the individual reviewing the facts to weigh the credibility of the witnesses and form their own opinions of the true sequence of events. Plaintiff is asking this Court to preclude summary judgment essentially any time an investigation uncovers unfavorable evidence against an employee and the same employee ambiguously deems such an investigation as "unfair." There is no authority supporting that notion, and it is beyond the scope of what the laws deems necessary to protect the employment interests of a public employee. The District Court's rejection of such arguments was appropriate, and Defendants Stoelk and Stoelk Investigation request the decision be upheld.

5. *There is no conspiracy where there is no evidence to suggest Stoelk conducted his investigation with the motive of finding enough evidence to terminate Plaintiff's employment, or that he participated in the due process proceeding*

The District Court correctly concluded that in addition to there being no evidence supporting a claim for conspiracy, noting that while Chief Ney may have had concerns about the cost of the investigation, Plaintiff pointed to nothing that

"demonstrate[ed] that Chief Ney did in fact interfere with the investigation other than his conclusory assertion to the contrary." ER-21. Thus, even if this court were to find the District Court erred in granting summary judgment on the wrongful termination and deprivation of rights claims for LFA, there is still the question of whether there is evidence on the record to support a conspiracy claim against Stoelk and Stoelk Investigation. As the District Court correctly found, and as the evidence supports, there is no question of fact, and summary judgment for Stoelk and Stoelk Investigation is still appropriate. Plaintiff cannot point to any evidence – nor does Plaintiff particularly appear to argue – that Chief Ney or any other individual from LFA suggested to Stoelk that the ultimate purpose of the investigation was to have Merrill fired, or to find evidence sufficient to terminate his employment. Nor is there evidence Stoelk conducted his investigation with the underlying motive of finding evidence sufficient to terminate Merrill's employment. Frankly put, there is no evidence to suggest Stoelk and LFA "conspired" or had a meeting of the minds to achieve a like purpose.

Additional issues with Plaintiff's conspiracy claims arise when considering the fact that for a private individual like Stoelk to engage in a civil conspiracy to violate a federal mandate, there must be evidence that the individual was acting under color of law to violate that state directive. Typically, only a state official or public entity can act under color of law and deprive an individual of his or her

constitutionally protected rights. However, private parties may act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights. *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). Thus, in order to establish a claim that Stoelk violated Merrill's Fourteenth Amendment rights, he "must show an agreement or meeting of the minds to violate constitutional rights [in which each participant] **must at least share the common objective of the conspiracy**." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (emphasis added). Furthermore, "[p]rivate parties are viewed as state actors under Section 1983 **in only rare circumstances**." *Id.* (emphasis added). When a court evaluates whether a private party has acted under color of law, it must "start with the presumption that private conduct does not constitute governmental action." *Id*. (*quoting Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir.1999) (internal quotations omitted).

In this case, there is no evidence that a meeting between Stoelk and Ney (or any other authority at LFA) met or discussed a plan prior to initiating an investigation into the allegations against Merrill. There is no evidence that Stoelk was provided specific directions or instructed to conduct his investigation in a specific manner designed to achieve an ultimate goal. There is no evidence Stoelk met with anyone at LFA to develop a strategy that could lead to Merrill's dismissal.

Stoelk was not present nor otherwise participated in the pre-disciplinary hearing. In short, there is no evidence Stoelk was involved in Merrill's termination process beyond conducting interviews of potential witnesses and drafting a report summarizing those interviews. That does not meet the threshold of "acting under color of law" that courts have deemed a necessary component of a conspiracy claim. The District Court correctly rejected Merrill's deprivation of rights claim against Stoelk.

Not only is there no evidence to suggest Stoelk had an agreement with LFA to generally work together to terminate Merrill's employment, but there is even less of a connection between the investigation Stoelk performed and the alleged deprivation of Merrill's rights. Successfully proving that a civil conspiracy has occurred requires a showing of an agreement or meeting of the minds to accomplish an unlawful purpose. *Morasch*, 232 Or App at 402. Here, the alleged unlawful purpose was to deprive Merrill of his constitutional right to due process. As discussed above, due process in a case like this requires that an individual be given notice and an opportunity to be heard prior to the termination of his or her employment. *Cleveland Bd. of Educ*, 470 U.S. at 546. Thus, for Merrill's civil conspiracy claim against Stoelk to survive summary judgment, he must be able to point to some evidence suggesting Stoelk and LFA worked together to deny Merrill of the rights guaranteed to him under due process, such as receiving adequate notice,

having a pre-disciplinary hearing, or having a meaningful opportunity to respond to the allegations against him. Again, there is no evidence of any of these things occurring. There is no evidence Stoelk collaborated with Chief Ney in the decision or drafting the letter that placed Merrill on administrative leave. There is no evidence Stoelk participated in the June 29th Pre-Disciplinary hearing. There is no evidence Stoelk actively tried to discourage Merrill from contesting the allegations made against him, or that Stoelk made recommendations to LFA regarding Merrill's continued employment. As noted above, all the evidence establishes is that Stoelk performed an investigation – even if the investigation was overly broad in scope – but otherwise did not contribute, assist, or aggravate LFA's failure to provide Merrill with the appropriate notice or pre-disciplinary hearing. For these reasons, the ruling of the District Court should be upheld.

### III. Stoelk and Stoelk Investigation did not owe Merrill a duty of care necessary to establish a viable negligence claim

*1. Introduction*

In addition to the two conspiracy claims brough against Stoelk and Stoelk Investigation, Plaintiff also asserted a negligence claim against Stoelk. At summary judgment, Stoelk and Stoelk Investigation argued that Plaintiff's negligence claim failed as a matter of law because Stoelk did not owe a duty to Merrill throughout the course of his investigation. ER-495-503. The District Court agreed with Stoelk and Stoelk Investigation, concluding that:

"The Complaint in this case is limited to purely economic loss damages. See Compl. ¶ 48 ("Plaintiff is damaged in an amount equal to his past and future lost wages as a paramedic and firefighter, to be determined at trial."). *Onita* [*Pacific Corp. v. Trustees of Bronson*, 315 Or 149 (1992)] thus requires Plaintiff to establish a special relationship beyond the general common law. *See Dossett v. Ho-Chunk, Inc.*, 472 F. Supp. 3d 900, 917 (D. Or. 2020) ("Oregon law is clear that absent a special relationship not present here, a plaintiff cannot recover for negligently causing a stranger's purely economic loss without injury to his person or property.") (citation and footnote omitted). A review of the Complaint, however, reveals no allegations that a special relationship between Plaintiff and Stoelk existed. See Compl. ¶¶ 46–49. Instead, the Complaint generally asserts that Stoelk conducted a "negligent investigation." Compl. ¶ 47. Significantly, Plaintiff's response failed to address Stoelk's economic loss argument entirely." ER-28.

Thus, it is apparent the District Court rejected Plaintiff's negligence claim pursuant to the *Onita* decision, finding there is no evidence to suggest a special relationship existed between Stoelk and Merrill. Plaintiff's Opening Brief indicates the District Court erred in dismissing his negligence claim. Opening Br. p. 1, 18, 26. However, at no point in Plaintiff's opening brief does he address the District Court's ruling related to the *Onita* opinion – or otherwise argue a duty existed between Stoelk and Merrill. Thus, out of an abundance of caution, Defendants Stoelk and Stoelk Investigation reiterate their arguments relating to the applicability of the *Onita* decision to this case, and respectfully request the District Court's

determination that this authority precludes Merrill's negligence claim because there is no allegation of a special relationship.

2. *Onita Pacific Corp. v. Trustees of Bronson further supports dismissal of Plaintiff's negligence claim because Merrill's claim is for purely economic losses*

Merrill's negligence claim fails under *Onita Pacific Corp. v. Trustees of Bronson* because "[f]oreseeability alone is not a sufficient basis to permit the recovery of economic losses on a theory of negligence." *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 165 (1992). The *Onita* opinion stemmed from a real estate development dispute between purchasers and sellers of real property. 315 Or at 152. The plaintiffs in that case sought damages for negligent misrepresentation, and the case was ultimately tried by a jury, who returned a verdict in favor of the plaintiffs. *Id*. at 155. Defendants then moved for a judgment notwithstanding the verdict, arguing that Oregon did not recognize the tort of negligent misrepresentation, and in the alternative arguing that a new trial was warranted because the trial court's instruction on damages was incorrect. *Id*.

On appeal, the first question the Oregon Supreme Court considered was whether Oregon recognized the tort of negligent misrepresentation, and ultimately the court decided that in some circumstances a party may be liable for economic

losses[3] sustained by others who rely on their representations negligently made, but also held that the scope of duty and the scope of recovery should be evaluated on a case-by-case basis. *Id*. at 159. The Court noted that:

> "[O]ne ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property. It does not suffice that the harm is a foreseeable consequence of negligent conduct that may make one liable to someone else, for instance to a client. Some source of a duty outside the common law of negligence is required."

Hence, where the recovery of economic losses is sought on a theory of negligence, the concept of duty as a limiting principle takes on a greater importance than it does with regard to the recovery of damages for personal injury or property damage. *Id*. (quoting *Hale v. Groce*, 304 Or 281, 284, 744 P.2d 1289 (1987).

Under this framework, the *Onita* court determined that the key question was whether the purchasers and vendor of the real property, who were engaged in arm's-length negotiations, owed each other a duty of reasonable care while communicating factual information to prevent economic losses to the other. *Id*. at 160. The court went on to say that such an analysis requires the court to "examine the nature of the parties' relationship and compare that relationship to other relationships in which

---

[3] Here, the term "economic losses" is used to describe financial losses such financial losses, such as lost wages or loss of future income, rather than damages for injury to person or property. Here, Merrill does not allege that he suffered any physical injury or damage to property. Instead, Merrill only alleges he is entitled to loss of past and future wages and non-economic damages. *See generally* Compl.

the law imposes a duty on parties to conduct themselves reasonably so as to protect the other parties to the relationship." *Id*. The *Onita* court then went on to identify a number of relationships where the law has imposed a duty of care, such as attorney-client relationships, the relationship between engineers and architects, agent-principal relationships, and primary insurer-insured relationships. In each of these relationships, the court noted that, "the professional who owes a duty of care is, at least in part, acting to further the economic interest of the 'client,' the person owed the duty of care." *Id*. at 161.

Turning back to the case before them, the *Onita*, court noted the relationship between the purchasers and vendors of the property was in stark contrast to the other professional relationships it reviewed, namely because the parties in that case were adversarial, negotiating at arm's-length to further their own economic interests. *Id*. For this reason, the *Onita* court concluded there is no actionable claim for negligent misrepresentation for economic losses between two parties in arm's-length negotiations. *Id*. at 161-62. The court went on to note that this ruling was consistent with Restatement (Second) of Torts § 552[4] and its corresponding comments and illustrations, stating:

> "Our conclusion also is consistent with Restatement (Second) of Torts § 552. The text of section 552 and the

---

[4] Section 552 of Restatement (Second) of Torts was used in the court's analysis for concluding that the tort does in fact exist in Oregon and for defining the scope of the tort.

comments and illustrations thereto suggest that the editors, in using the words "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions," had in mind relationships other than the relationship between persons negotiating at arm's length. The comments provide no illustrations dealing with business adversaries in the commercial sense.

[…]

We read Restatement section 552 as consistent with the rule that this court has adopted for negligence actions for the recovery of economic losses, *viz.*, nongratuitous suppliers of information owe a duty to their clients or employers or to intended third-party beneficiaries of their contractual, professional, or employment relationship to exercise reasonable care to avoid misrepresenting facts. In the case at bar, defendants and their representative did not owe any duty to plaintiffs during the negotiations by virtue of a contractual, professional, or employment relationship or as a result of any fiduciary or similar relationship implied in the law. Here, the relationship was adversarial. In an arm's-length negotiation, a negligent misrepresentation is not actionable. Hence, plaintiffs cannot maintain their claim for negligent misrepresentation against defendants. *Id*. at 164-65 (internal citations omitted).

Applying the *Onita* court's analysis to Merrill's negligence claim against Stoelk Investigations, it is apparent Merrill's claim is not actionable because the relationship between Stoelk and Merrill does not establish a source of a duty that Stoelk or Stoelk Investigation owed to Merrill. Merrill did not hire Stoelk, LFA did. There was no relationship between Merrill and Stoelk, other than Merrill was the

subject of the investigation. If anything, the nature of the relationship between the two was more akin to an adversarial relationship rather than a fiduciary relationship. There is certainly no evidence Stoelk was involved in the termination process of Merrill to further the economic gain or protect his economic interests. There is no evidence Stoelk or Stoelk Investigations owed a duty to Merrill "by virtue of a contractual, professional, or employment relationship or as a result of any fiduciary or similar relationship implied in the law." *Id*. at 165. For this reason, Onita renders Plaintiff's negligence claim invalid as a matter of law and the District Court correctly dismissed the claim.

**IV.    The District Court's ruling concerning Discovery of communications between Stoelk and Diana Moffat are not subject for review because Plaintiff did not properly object to the Magistrate Judge's ruling.**

As noted above, Plaintiff raises issue with a discovery dispute that arose in the interim between LFA's filing of their summary judgment motion and Stoelk/Stoelk Investigation's filing of their own summary judgment motion. The dispute centers around whether communications between Craig Stoelk, Chief Ney and attorney Diana Moffat are subject to attorney-client privilege and are therefore discoverable. Plaintiff filed what the District Court equated to a motion to compel against LFA to obtain such communications, which LFA objected to. The Magistrate Judge denied Plaintiff's motion to obtain discovery, and Plaintiff never filed any objections to that ruling. While Stoelk and Stoelk Investigation were not

the party from which Merrill was seeking discovery, they do agree with the arguments and authority cited by LFA in their response to Plaintiff's Opening Brief, and agree (1) Fed. R. Civ. P. 72(a) precludes review of this issue, and (2) even if Rule 72(a) is not applicable, privilege applies and any such communications would not be discoverable. Defendants Stoelk and Stoelk Investigation join the arguments made by LFA regarding the discovery issue, and incorporate the arguments made in that brief as if fully stated herein.

## **CONCLUSION**

The District Court made the correct decision when granting both LFA's and Stoelk/Stoelk Investigation's motions for summary judgment. Merrill failed to produce any facts or identify any evidence that called into controversy whether LFA violated any of Merrill's constitutionally protected rights, and the evidence clearly shows Merrill had full notice of the claims being brought against him and did in fact have an opportunity to be heard on the matter. Notwithstanding the lack of any evidence suggesting a constitutional violation occurred, Merrill failed to completely address the manner in which Stoelk and Stoelk Investigation allegedly conspired with LFA to achieve a meeting of the minds to accomplish a nefarious purpose. The notion Stoelk's investigation was impartial merely because Stoelk interviewed a number of individuals who had interactions with Merrill and formed negative opinions about him is not enough to suggest the investigation is patently unfair or

impartial.  Finally, though Plaintiff's briefing indicates he takes issue with the dismissal of the negligence claim, he continues to fail to explain why the *Onita* opinion should not apply in this case.  For each of these reasons, Merrill's claims fail as a matter of law, and the ruling of the District Court granting Defendants' motions for summary judgment should be affirmed.

Date:  May 30, 2023

CHOCK BARHOUM LLP

*s/ Jeffrey W. Hansen*

Jeffrey W. Hansen, OSB No. 923290
Attorneys for Defendants-Appellees
Craig Stoelk and Stoelk Investigation
and Consultation, LLC

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**  22-35731

The undersigned attorney or self-represented party states the following:

(•) I am unaware of any related cases currently pending in this court.

( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**  s/ Jeffrey W. Hansen  **Date**  05/30/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 17**  *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 22-35731

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Defendants-Appellees Stoelk Investigation and Consultation, LLC and D. Craig Stoelk's Answering Brief

**Signature** | s/ Jeffrey W. Hansen | **Date** | 05/30/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15** *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**    22-35731

I am the attorney or self-represented party.

**This brief contains** 10,871 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**   s/ Jeffrey W Hansen       **Date** 05/30/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                             *Rev. 12/01/22*