No. 22-35731

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

LARRY W. MERRILL,

Plaintiff-Appellant

v.

LANE FIRE AUTHORITY, TERRY NEY,
STOELK INVESTIGATION AND CONSULTATION, LLC,
AN OREGON LIMITED LIABILITY COMPANY, AND D. CRAIG STOELK,

Defendants-Appellees

On Appeal from the United States District Court
For the District of Oregon, Eugene
No. 6:20-cv-00984-MK
Honorable Mustafa Kasubhai

---

**APPELLANT'S REPLY BRIEF**

---

Erin E. Gould
Erin E. Gould, LLC
800 Willamette Street, Suite 530
Eugene, OR 97401
541-485-1088
erin@eringouldlaw.com

Attorney for Appellant
Larry W. Merrill

## DISCLOSURE STATEMENT

Appellant is an individual and is not required to file a Disclosure Statement.

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.  The District Court's dismissal of Merrill's wrongful termination and deprivation of rights claim was improper because material factual issues exist that minimum due process requirements were not met in providing Merrill with proper notice of the allegations against him and the reasons for his termination.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

A. The scope of Stoelk's investigation violated both the CBA provisions and LFA personnel policies. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B. Merrill was not provided proper notice of the allegations against him and was denied the opportunity to be heard at a meaningful time and in a meaningful manner. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C. Stoelk conducted an unfair and biased investigation at the direction of Ney showing evidence of a conspiracy to terminate Merrill prior to the conclusion of the investigation. . . . . . . . . . . . . . . 20

II.  The District Court's ruling regarding the discovery of communications between Stoelk and Moffat was made in the context of Summary Judgment and should be reviewed as a related decision that may have precluded Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

TABLE OF AUTHORITIES

## **CASES**

*Sandoval v. County of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) . . . . . 2, 26, 27

*Simo v. Union of Needletrades*, 322 F.3d 602, 610 (9th Cir. 2003) . . . . . . . . . . . 10

*T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986) . . . . 11

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bradford v. Union Pacific R. Co.*, 767 F.3d 865, 871 (9th Cir. 2014) . . . . . . . . . 12

*Brewster v. Bd. of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

*Carey v. Piphus*, 435 U.S. 247, 259 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cleveland Bd. Of Education v. Loudermill*, 470 U.S. 532, 543 (1985). . . . . . . . . 18

*Cruz v. Nat'l Steel & Shipbuilding Co.*, 910 F.3d 1263, 1270 (9th Cir. 2018) . . . 11

*Far Out Productions v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2002) . . . . . . . . . . . 11

*Gilbert v. Homar*, 520 U.S. 924, 932 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Tuuamalemalo v. Greene*, 946, F.3d 471, 474 (9th Cir. 2019) . . . . . . . . . . . . . . . 9

## STATUTES

ORS 40.225. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ORS 243.650 through 243.806. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ORS 40.255(1)(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 26

ORS 703.450 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

ORS 703.450(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## RULES

Fed. R. Civ. P. 72(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 26

Federal Rule of Evidence 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 26

Federal Rule of Evidence 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## CONSTITUTIONAL AMENDMENTS

U.S. Const., amend. XIV, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

INTRODUCTION

This case raises two primary issues. The first is whether the District Court erred by granting summary judgment in favor of Defendants-Appellees Lane Fire Authority ("LFA"), Chief Terry Ney ("Ney"), Stoelk Investigation and Consultation, LLC and D. Craig Stoelk (hereinafter, collectively "Stoelk") even though significant issues of material fact exist as to each of Plaintiff-Appellant Larry Merrill's ("Merrill") claims.

Significant issues of fact exist as to whether Merrill was afforded adequate due process during the investigation or at the pre-disciplinary hearing. Merrill was not provided notice of the scope of the investigation, was not given an opportunity to respond to allegations and was subsequently terminated. The lack of due process afforded Merrill in the investigation of his alleged misconduct, the inconsistent application and enforcement of LFA personnel policies, the inconsistent application and enforcement of collective bargaining agreement ("CBA") provisions related to discipline and discharge, and the expanded scope of the investigation conducted by Stoelk together denied Merrill the opportunity to properly defend himself against allegations of misconduct reaching back nearly ten years.

The second issue in this case is whether the District Court erred in a related decision to deny Merrill discovery of communications between Stoelk, LFA, and general counsel for LFA, Diana Moffat ("Moffat"). The District Court concluded that

1

Stoelk's communications with Moffat and Ney are privileged pursuant to ORS 40.225 and Federal Rule of Evidence 501. The District Court denied Merrill's Motion to Compel those communications which likely contain evidence of Ney and LFA's intent to fire Merrill prior to the investigation being conducted.

Defendants argue in their response briefs that Merrill waived his ability to claim such error because he failed to timely object to the Magistrate Judge's nondispositive order denying the discovery. Merrill acknowledges Fed. R. Civ. P. 72(a) may preclude a review of the claimed error in the Magistrate Judge's denial of his motion to compel. The ruling, however, was made in the context of summary judgment as a related decision and should be reviewed for an abuse of discretion. *See Sandoval v. County of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021).

## SUMMARY OF THE ARGUMENT

In 2018, Merrill was terminated after an investigation was conducted into his workplace behavior related to an incident in which he allegedly communicated with a female co-worker via text message. The investigation into the alleged text message concluded Merrill violated LFA's personnel policies related to sexual harassment. The investigation into Merrill's workplace behavior and the subsequent termination did not provide adequate due process and revealed genuine issues of material fact of bias in the course of the investigation and decision-making process. Merrill was

wrongfully terminated after being denied due process and was therefore deprived of his constitutional property right in his employment with LFA.

In addition to being denied due process and being deprived of his constitutional property right in his employment with LFA, Merrill suffered significant damages due to Ney's defamatory statements that Merrill committed statutory criminal acts of theft and harassment. Ney's false statements were based on the negligent investigation conducted by Stoelk and the publication of those statements ultimately resulted in the revocation of required certifications to continue working as a fire fighter.

Contrary to Defendants' claim that Merrill abandoned his argument that questions of fact exist as to whether Ney directed Stoelk to limit his investigation to certain individuals and discouraged Stoelk from interviewing additional personnel who worked with Merrill in his position at the current fire station, Merrill raised that very issue in his opening brief: "There is evidence Chief Ney directed Mr. Stoelk to limit his investigation to certain individuals and discouraged Mr. Stoelk from interviewing personnel who worked with Mr. Merrill in his position at the current fire station." Opening Br., p. 3. Merrill asserted in his Opening Brief and continues to assert there is evidence to suggest Ney intended to terminate Merrill prior to the start of the investigation and that Stoelk worked in concert with Ney to accomplish that task. The investigation was conducted in a negligent manner by Stoelk leading to the

publication of defamatory statements by Ney which resulted in the revocation of the fifteen fire fighter certifications held by Merrill prior to the investigation.

Moreover, the scope of the investigation expanded well beyond the original alleged text message to his female coworker to include allegations from as far back as ten years or more (one of the allegations regarding inappropriate text messaging dates back to 2007). Allegations were brought to the attention of LFA at the time they allegedly occurred and command staff determined at that time they were unworthy of an inquiry. Based on those past allegations, Ney and Stoelk concluded Merrill violated both LFA personnel policies and state criminal statutes which resulted in his unlawful termination.

The primary allegations against Merrill that led Stoelk to conclude in his investigative report that Merrill violated LFA personnel policies and committed criminal acts were brought to the attention of LFA command staff *at the time the alleged incidents occurred* and were dismissed years ago as not warranting an investigation. LFA command staff (Capt. Colwell, Chief Hepple, and Chief Borland) were presented with two separate written complaints against Merrill regarding the alleged theft of underwear at the fire station and, after receiving the written complaints, command staff determined the incident did not require further consideration on their part. Not only did command staff violate its own workplace

harassment and investigation policies by not conducting an investigation at the time the allegations were reported, it violated multiple provisions of the discipline and discharge article of the CBA by terminating Merrill years later for unfounded complaints of misconduct it chose not to investigate.

The fact that Capt. Colwell ("Colwell"), who at one point supervised Merrill, was also likely aware of the alleged inappropriate texting with Jessica Topel ("Topel") from 2007 when the alleged theft of underwear was reported only makes LFA's inaction more egregious and suggests there was a workplace culture that was found to be acceptable by LFA, its command staff, and its employees. LFA and its command staff had notice of allegations against Merrill at the time they occurred and found in multiple instances the behavior did not warrant an investigation. It is a clear violation of Merrill's right to due process to terminate him for the alleged behavior years later without providing him an opportunity to present witnesses or evidence on his behalf.

Defendants claim Merrill must point to some authority that limits the scope of an investigation in order to claim a constitutional due process violation. Merrill does not need to cite an authority for the proposition that a government employer's investigation into workplace conduct must follow certain standards and criteria. The time frames and disciplinary process of LFA's workplace investigations are defined

5

in the CBA - a contractual employment agreement between LFA and the union. As a represented employee, Merrill was permitted the same due process under the CBA as all other represented employees and where the CBA did not govern, Merrill was permitted the same due process under the employment policies of LFA as all other employees. Merrill was provided neither. The CBA provisions and LFA policies clearly outline the deadlines and statutes of limitations related to disciplinary action that may be taken for workplace conduct. The investigation into Merrill's alleged conduct ignores its own employment policies and the contractual employment agreement between LFA and the union, a contract that was negotiated and agreed upon by both parties pursuant to the Oregon Public Employee Collective Bargaining Act which is governed by ORS 243.650 through 243.806.

The purpose of statutes of limitations is to protect the accused from unfair prosecution. After a long period of time, the accused may no longer be in possession of key evidence relevant to defending themselves. Of particular concern is relevant eyewitness testimony, especially if no formal statement was made by a witness near the time of the alleged offense. People's memories fade and become less reliable over time, and it is considered unreasonable to expect witnesses to be able to clearly recall details from an incident that may have occurred so long ago, and yet that is precisely what Stoelk, Ney, and LFA expected from Merrill. Even when key witnesses claimed

6

to not recall certain events, Stoelk, Ney, and LFA took the position that the incident in question transpired by relying on third party accounts with no personal knowledge of the events in question.

It is also simply unjust for LFA to have had the opportunity to investigate allegations against Merrill and, in violation of their own policies related to sexual harassment in the workplace, to dismiss such claims out of hand only to revive them years later in violation of the CBA and support Stoelk's findings that not only did Merrill's alleged behavior violate LFA policies, but state criminal statutes as well. Ney's decision to terminate Merrill based on Stoelk's investigation into allegations beyond the defined scope of the investigation and disciplinary process denied Merrill his right to due process and deprived him of his constitutional property right in employment with LFA.

Stoelk, Ney, and LFA take no accountability for Defendant LFA's inaction years ago under the CBA and LFA policies, but find Merrill's alleged behavior so reprehensible today as to justify termination. The simple fact that the allegations stem from incidents dating back as far as 2007 should be sufficient to create a genuine issue of material fact to be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

In granting LFA, Ney, and Stoelk their Motions for Summary Judgment, the

7

District Court ignored the fact that the CBA and LFA employment policies define the scope of the investigation and disciplinary process that should have been applied in this case. The District Court agreed with LFA, Ney, and Stoelk's decision to dismiss Merrill's right to a fair and unbiased investigation conducted pursuant to the terms and conditions of his employment contract and the employment policies of his employer. Merrill is entitled to an investigation conducted pursuant to the CBA in the same manner as any other represented LFA employee facing allegations of workplace misconduct and had a reasonable expectation that his employment contract and employment policies would govern the investigation process. Instead, Stoelk, Ney, and LFA changed the criteria outlined in the provisions of the CBA to suit their needs.

Defendants attempt to dismiss their violations of the CBA by pointing to the fact that the union itself did not grieve Merrill's termination through arbitration. The union's decision of whether to arbitrate Merrill's termination likely had more to do with a business decision regarding the cost of arbitration rather than the merits of the case as each party would have been responsible for its own costs and the arbitrator's expenses would have been shared equally by the parties pursuant to the terms of the CBA. Regardless, the union's decision not to arbitrate has no bearing on Merrill's ability to bring a claim for wrongful termination against his employer, nor does it

8

provide any insight into the merits of the case as Defendants seem to suggest.

In its related decision, while Defendants' Motions for Summary Judgment were pending, the District Court determined Stoelk was a "representative of the lawyer," as defined in ORS 40.255(1)(f) and denied Merrill discovery of communications between Stoelk, Ney, and Moffat that would have likely precluded summary judgment in this case. At a minimum, the District Court should have ordered an *in camera* review of the communications in question to determine if allowing the additional discovery would have revealed evidence of a conspiracy between LFA, Stoelk, and Ney to effectively deny Merrill due process that would have precluded summary judgment.

Many of the facts underlying this case are in dispute and because genuine disputes of material fact preclude the award of summary judgment they should be reviewed in the light most favorable to the non-moving party in the District Court. *Tuuamalemalo v. Greene*, 946, F.3d 471, 474 (9th Cir. 2019). Although discovery matters are typically viewed as nondispositive matters, the Magistrate Judge's order in this case denying the discovery of specific communications between Defendants could have precluded summary judgment and was made in the context of summary judgment. LFA and Ney filed their Motion for Summary Judgment prior to the discovery dispute and Stoelk filed his Motion for Summary Judgment in the midst of

9

the discovery dispute. The District Court's order denying the additional discovery was issued well after the parties concluded briefing on the Motions for Summary Judgment. The existence of such evidence creates a material issue of fact as to whether Merrill was provided his right to due process in the termination of his employment. Although considerable issues of material fact exist as to each of Merrill's claims, the District Court granted LFA, Ney, and Stoelk Motions for Summary Judgment.

The District Court ignored the factual disputes in this case and made credibility determinations at the summary judgment stage that should have been left to the finder of fact at the trial stage. Therefore, for the reasons stated herein, the District Court erred in granting Defendants' Motions for Summary Judgment because summary judgment is not proper if material factual issues exist for trial. There are clearly questions of fact given the passage of time, conflicting accounts, faded memories, and lack of preserved evidence that preclude summary judgment in this case.

## ARGUMENT

Summary judgment is not proper if material factual issues exist for trial. *See Simo v. Union of Needletrades*, 322 F.3d 602, 610 (9th Cir. 2003). Summary judgment is improper if "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Far Out Productions v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2002); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505 (1986). A fact is "material" if the fact may affect the outcome of the case. *See Anderson* at 248. And under Federal Rule of Evidence 401, evidence is relevant if it "has any tendency to make a fact more or less probable" and that fact "is of consequence in determining the action." Fed. R. Evid. 401.

"[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Summary judgment may be affirmed, however, on any ground supported in the record. *See Cruz v. Nat'l Steel & Shipbuilding Co.*, 910 F.3d 1263, 1270 (9th Cir. 2018).

I.    The District Court's dismissal of Merrill's wrongful termination and deprivation of rights claim was improper because material factual issues exist that minimum due process requirements were not met in providing Merrill with proper notice of the allegations against him and the reasons for his termination.

The Due Process Clause of the Fourteenth Amendment provides that no state

11

shall, "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). The parties do not dispute that Merrill had a protected property interest in his continued employment because pursuant to the CBA, employees will not be subject to discharge without just cause. Opening Br. Add., p. 23. "Government employees can have a protected property interest in their continued employment if they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause." The dispute between the parties is whether there was a lack of process.

In determining what process is due, the court applies the factors specified by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The factor that requires attention in this case is whether the procedures that Defendants used "present[ed] a meaningful risk of an erroneous deprivation of Plaintiff's interest." *Bradford v. Union Pacific R. Co.*, 767 F.3d 865, 871 (9th Cir. 2014). Merrill contends

the procedures in connection with the investigation, pre-termination hearing, and subsequent termination were insufficient to protect against an erroneous deprivation of Merrill's property interest in his employment. Merrill bases his argument on: (1) the expanded scope of the investigation to include allegations against him in violation of the CBA and LFA personnel policies, (2) the lack of notice to be able to defend himself against such allegations, and (3) the unfair and biased investigation conducted by Stoelk at the direction of Ney showing evidence of a conspiracy to terminate Merrill prior to the conclusion of the investigation. All of which create genuine issues of material fact for trial and should have precluded summary judgment by the District Court.

### A. The scope of Stoelk's investigation violated both the CBA provisions and LFA personnel policies.

The scope of Stoelk's investigation into the allegations of sexual harassment against Merrill violated both the provisions of the CBA and LFA personnel policies. Merrill's right to due process included the right to a fair and unbiased investigation to be conducted in accordance with the terms and conditions of the CBA as well as LFA personnel policies. The investigation into Merrill's alleged conduct should have been conducted in the same manner as any other represented employee facing allegations of workplace misconduct. Merrill had a reasonable expectation that his

employment contract and the employment policies of LFA would govern the investigation process. Instead, Stoelk, Ney, and LFA blatantly disregarded the very policies and provisions in place that are meant to ensure employees are afforded the due process to which they have a constitutional right.

First, LFA violated it's own Workplace Discrimination and Harassment policy by failing to act on the allegations brought forward in 2012 by Jozwiak and Hollett against Merrill for the alleged theft of underwear. Jozwiak, Hollett, and Colwell all testified written complaints were submitted to command staff at the time of the alleged incident and LFA command staff chose not to investigate the matter. 3-ER-555, 557, 559. LFA's Workplace Discrimination and Harassment policy states the following:

> "Lane Fire Authority is committed to maintaining an environment free of unlawful discrimination and harassment for both members and non-members of the Authority. Unlawful discrimination or harassment based on a person's protected class will not be tolerated nor condoned. *Reported cases of unlawful discrimination or harassment will be investigated immediately and offenders will be subject to immediate discipline as set forth in this policy.*" Opening Br. Add., p. 17. (Emphasis added).

LFA's Complaint Procedure policy contains the following language:

> "It is recommended that complaints be filed in writing for documentation purposes; however, *each reported case, whether verbal or in writing, will be considered serious and investigated thoroughly. Failure by an Authority member to report cases of harassment could*

14

*imply a welcome relationship or environment and will not be condoned....* Each case will be quickly and confidentially investigated to determine whether harassment has occurred." Opening Br. Add., p. 21. (Emphasis added).

LFA's Investigation policy contains the following language for a fair investigation once a complaint has been received:

"*An investigation will be completed any time an allegation of harassment occurs.* The Fire Chief, or a representative appointed by the Board of Directors, shall undertake such investigation with the goal of its completion within thirty (30) days of the date the complaint was filed.... In any case where facts cannot be substantiated nor allegations proven, the behavior of all parties involved, including the overall behavior of all personnel at the worksite of the affected parties, will be monitored for a period of time.... *If no further incidents of behavior are observed or reported during the period of review, the matter will be considered closed.*" Opening Br. Add., p. 21-22. (Emphasis added).

In addition to violating its own personnel policies, Stoelk, Ney, and LFA also clearly violated the provisions of Article 13 of the CBA which defines the discipline and discharge process for LFA's represented employees to ensure due process is followed:

"After the timeframes indicated below, the discipline cannot be relied upon as the basis for progressive disciplinary action should another incident occur warranting discipline...:

Step 1 - written record of oral reprimand 1 year
Step 2 - written reprimand 2 years
Step 3 - suspension or demotion 4 years...

*No documentation regarding unfounded complaints shall be placed in*

15

> *an employee's personnel file, used in reviews for promotion, referred to in written performance evaluations, nor relied upon as a basis for discipline or future discipline.*" Opening Br. Add., p. 23-24. (Emphasis added).

In 2012, LFA was presented with two written complaints against Merrill for alleged misconduct involving theft of underwear in the fire station. Inconsistent with its own personnel policies, command staff determined the reports of alleged sexual harassment did not need to be investigated and failed to substantiate any of the facts or allegations put forward by Jozwiak and Hollett. Pursuant to LFA personnel policy, the matter was considered closed. The CBA makes clear such unfounded complaints cannot be referred to or relied upon as a basis for discipline or future discipline which is precisely what Stoelk, Ney, and LFA did in this case.

Moreover, pursuant to LFA's complaint procedure Colwell was obligated to come forward with the information he had about the alleged 2007 incident once he learned about it from his then-girlfriend Topel:

> "*All* Authority members are required to *immediately* report any perceived harassment, whether directed towards himself or herself, *another Authority member*, or towards a non-member by an Authority member, while on District property or while representing the Authority." Opening Br. Add., p. 20. (Emphasis added).

The fact that Colwell decided not to share his knowledge with command staff about previous allegations of Merrill's misconduct is not only in direct conflict with LFA

16

policy, but supports the notion that failure to report and investigate such allegations creates a culture of acceptance. Even more troubling is the fact that Colwell supervised Merrill for a period of time and still did not feel compelled to report to command staff his knowledge of the 2007 incident, or demand an investigation at the time the complaints were filed in 2012.

Merrill does not need to point to any legal authority to limit the scope of the investigation. The investigation is limited in its scope under LFA personnel policies and the provisions of the CBA - both of which were violated by Stoelk, Ney, and LFA in the course of the investigation. Merrill had a reasonable expectation that he would be treated in the same manner as other LFA employees when the investigation was initiated. The expanded scope of the investigation to include past allegations related to matters LFA command staff deemed unfounded denied Merrill his due process as those matters should have been considered closed under the terms of his employment contract and LFA personnel policies.

> *B. Merrill was not provided proper notice of the allegations against him and was denied the opportunity to be heard at a meaningful time and in a meaningful manner.*

"The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard 'at a meaningful time and in a meaningful manner." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149

F.3d 971, 984 (9th Cir. 1998)(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

A plaintiff's interest in continued employment is substantial and weighs in favor of

requiring defendants to offer procedural safeguards. *Cleveland Bd. Of Education v.*

*Loudermill*, 470 U.S. 532, 543 (1985)("[T]he significance of the private interest in

retaining employment cannot be gainsaid" because of the "severity of depriving a

person of the means of livelihood"); *see Gilbert v. Homar*, 520 U.S. 924, 932 (1997).

 In a wrongful termination case, "some opportunity for the employee to present

his side of the case is recurringly of obvious value in reaching an accurate decision"

because such cases "often involve factual disputes." *Loudermill*, 470 U.S. at 543. In

this case, LFA found the complaints unsubstantiated at the time they were made, yet

relied upon those same allegations years later to terminate Merrill. Any "facts" that

could have been proven or disproven at the time of the incident are not only in

dispute, but because they were never investigated for their truth are now simply

allegations without any evidence to support a finding of a violation.

 The one key piece of evidence (the underwear in question) that may have been

recovered at the time of the incident has clearly not been preserved over the course

of time. The witnesses who offered testimony could not even confirm the underwear

found in Merrill's possession was the alleged stolen underwear. The only testimony

linking the alleged stolen underwear to the underwear in Merrill's possession is the

belief that both pairs were a brand sold at Fred Meyer. 3-ER-557, 560. Fred Meyer is a department store. A department store is defined as "a store having separate sections for a wide variety of goods."[1] A brief online search revealed at least seven different brands of women's underwear are sold at Fred Meyer, only one of which appears to be exclusively sold at Fred Meyer. In other words, the simple fact that the underwear in question was allegedly purchased at Fred Meyer is conclusive of absolutely nothing. The fact that the underwear in question was not exclusively sold at Fred Meyer (witness testimony supports the conclusion that the underwear in question was not "Fred Meyer" brand) only creates more issues of material fact in determining who and where the underwear in question was purchased.

The fact that Jennifer Wilson ("Wilson") and Merrill testified Wilson willingly provided Merrill a pair of her own underwear during the same time period the alleged theft occurred only adds another plausible explanation for the underwear in his possession. Even if it were determined that relying on those unsubstantiated allegations LFA chose not to investigate from nearly ten years ago is not a violation of Merrill's due process, there are significant issues of material fact that a jury could consider in favor of either party.

*C. Stoelk conducted an unfair and biased investigation at the direction*

---

[1] https://www.merriam-webster.com (last updated June 16, 2023).

*of Ney showing evidence of a conspiracy to terminate Merrill prior to the conclusion of the investigation.*

Defendants argue, and the District Court agreed that Merrill is unable to point to any evidence that the ultimate purpose of Stoelk's investigation was to have Merrill fired. This is a circular argument because the evidence Merrill believes proves his theory was denied discovery while Motions for Summary Judgment were pending. 1-ER-31-32. Although the District Court dismissed Merrill's assertions as insufficient to create a genuine issue of material fact as to whether Ney improperly interfered with the investigation or was somehow biased, Merrill contends the evidence when reviewed in the aggregate is sufficient to create a number of genuine issues of material fact.

Merrill contends, based on the evidence in the record, that Ney directed Stoelk to conduct an investigation into the allegations against Merrill in a manner that would result in termination. Stoelk conducted his investigation in a manner that would achieve such a result. Stoelk's findings contain a number of conclusory statements unsupported by evidence in the record. In his report, Stoelk accused Merrill of "frottage type contacts" with female coworkers, "trolling behaviors," "grooming and harassing behaviors," and "engag[ing] in his fetish for women's underwear." 3-ER-581. At one point Stoelk states: "Mr. Merrill engaged in his fetish for women's

underwear not simply by going out and purchasing it or asking for it, *Mr. Merrill committed theft*." 3-ER-581. (Emphasis added).

This statement of fact by Stoelk is conclusory and mischaracterizes witness testimony. Both Merrill and Wilson testified that during the course of their consensual relationship, Wilson willingly provided Merrill with a pair of her underwear. 3-ER-567-68. Whether Merrill asked for the underwear is irrelevant, what is relevant is the fact that Merrill clearly did not commit theft in acquiring what Stoelk refers to as fetish "material." 3-ER-582.

Stoelk also mischaracterized Megan Jozwiak's ("Jozwiak") testimony when he states in his findings that, "Mr. Merrill entered the presumed private sleeping quarters of a female staff and rifled her dirty laundry to steal dirty underwear... [Merrill's] behavior related to how he obtains his material became an act of criminal theft and an invasion of another's personal space." 3-ER-581-82. Jozwiak never testified Merrill entered her "private sleeping quarters" and allegedly took her underwear. Jozwiak testified that when she would "go to do laundry" she would find her underwear were missing from "the clothes hamper" and at other times would be missing from the "communal washer" where she would go to retrieve her garments. There was no evidence offered in Jozwiak's testimony to suggest Merrill entered her private sleeping quarters and no witness accounts of Merrill doing so, yet Stoelk

21

stated as fact in his findings that these events occurred. Stoelk also concluded that Topel's account of Merrill photographing himself wearing Wilson's underwear with his penis exposed and sending the image to Wilson was an accurate report even though Topel admitted she never saw the image and both Wilson and Merrill stated they could not recall if such an incident occurred. 3-ER-562, 3-ER-567-68.

Stoelk also states in his findings of fact that the five women he interviewed "all reported independent of each other... that they had experienced forms of unsolicited sexual commentary, touching or theft as forms of Mr. Merrill's attempts to engage in inappropriate sexual misconduct." 3-ER-581. Stoelk's statement is a misrepresentation of the testimony of at least two witnesses that he interviewed. Aside from stating she regretted having a consensual sexual relationship with Merrill, Wilson never stated she had experienced forms of "unsolicited sexual commentary, touching or theft" before, during, or after the period of time she was involved with Merrill. 3-ER-568-69. And while Jozwiak assumed Merrill was the one who had taken her underwear, there was no evidence to corroborate the allegation. In fact, the complaints filed by both Jozwiak and Hollett at the time of the alleged theft lacked enough evidence to convince LFA command staff to initiate an investigation into the matter. 3-ER-557-58.

And even though Christine Hollett ("Hollett") testified that Merrill was

"aggressive" towards Jozwiak and was "coming onto her (Jozwiak)," Jozwiak herself did not provide any statements to support such allegations. 3-ER-559. In fact, Hollett's statements were later determined to be untrue. Jozwiak testified in the Department of Public Safety Standards and Training hearing that Merrill never said anything in her presence that was inappropriate and he had never come on to her or made advances toward her. 2-ER-68. Jozwiak testified that she had never seen Merrill talking inappropriately in a sexual manner to anyone at the fire station. 2-ER-68.

In addition, Stoelk's interpretation of the testimony provided by the witnesses portrays Merrill as a sexual predator. Stoelk's characterization of Wilson as "not an unwilling victim of Mr. Merrill's" suggests that she is, in fact, a victim and not a consenting adult who engaged in consensual sex with another consenting adult. 3-ER-581. Stoelk's use of a double negative proposes that Wilson was a *willing* victim of Merrill's alleged sexual harassment which is clearly an inaccurate and misleading description of any person who may be the victim of alleged sexual harassment.

As a licensed investigator, Stoelk is required to comply with the requirements of conduct found in ORS 703.450 which describes the standards of conduct for licensed investigators:

> (1) May not knowingly make any false report to an employer or client.
> (2) May not commit fraud or deceit toward a client or employer.
> (3) May not knowingly violate a court order or injunction in the course

of business as an investigator.

(4) May not commit an act that reflects adversely on the investigator's honesty, integrity, trustworthiness or fitness to engage in business as an investigator.

(5) May not act unprofessionally while acting as an investigator.

(6) May not use unlicensed persons to conduct investigative activities.

(7) Is responsible for the professional, ethical and legal conduct of the investigator's employees or other persons working under the investigator's supervision.

(8) Shall inform each client that the client has a right to receive a written contract. The contract shall clearly state the task to be performed and the rate of payment.

(9) shall inform each client that the client is entitled to receive both of the following reports concerning service rendered:

> (a) An oral report that is timely and adequate; and
>
> (b) A written report furnished by the investigator within seven days after written request is received from the client.

(10) Shall keep separate and distinct case files for each client and case. Case files must include all written agreements with the client, the date investigative activities began, copies of all correspondence and written reports generated and an accurate accounting of all time spent, activities conducted and expenses incurred by the investigator during the course of the case.

(11) Shall maintain a record of the term of employment of each employee or contractor.

(12) Shall maintain all records and files referred to in this section for not less than seven years.

(13) Shall maintain required security or insurance.

(14) Shall post the license of the investigator in a conspicuous place in the investigator's principal place of business.

(15) Shall include in all advertisements for the investigator's services the name and license number of the investigator.

(16) Unless performing services for a law enforcement or other governmental agency, may not attempt to give an impression that the investigator is connected in any way with a law enforcement or other governmental agency by any statement or activity, including using a title, wearing a uniform, using a badge or insignia or using an

24

identification card or by any failure to make a statement or act.

(17) Shall maintain the confidentiality of each client as required by rules of professional conduct established by the Board on Public Safety Standards and Training.

(18) May not submit false information to the Department of Public Safety Standards and Training.

(19) May not impede a compliance investigation.

(20) Shall return to the department the license and identification card issued by the department to the investigator no later than 15 days after the expiration or revocation of the license.

At a minimum, Stoelk acted unprofessionally (ORS 703.450(5)) by conducting a biased and unfair investigation into Merrill's alleged misconduct by including allegations from nearly ten years prior that had already been dismissed by LFA, substantiating those allegations with no evidence and conflicting accounts of events from witnesses, misrepresenting witness testimony in order to present a biased and unfavorable representation of Merrill, and by including his own inflammatory and editorialized comments to create a prejudice against Merrill, Stoelk violated the statutory standards of conduct for investigators. Whether Stoelk conducted the investigation in a negligent manner knowing the scope of the investigation was limited by the CBA and LFA policies is a question of fact for the fact finder at trial.

II. The District Court's ruling regarding the discovery of communications between Stoelk and Moffat was made in the context of Summary Judgment and should be reviewed as a related decision that may have precluded Summary Judgment.

In its related decision, while Defendants' Motions for Summary Judgment were

pending, the District Court determined Stoelk was a "representative of the lawyer," as defined in ORS 40.255(1)(f) and denied Merrill discovery of communications between Stoelk, Ney, and Moffat that would have likely precluded summary judgment in this case. At a minimum, the District Court should have ordered an *in camera* review of the communications in question to determine if allowing the additional discovery would have revealed evidence of a conspiracy between LFA, Stoelk, and Ney to effectively deny Merrill due process that would have precluded summary judgment.

Evidence is relevant if it "has any tendency to make a fact more or less probable" and the fact "is of consequence in determining the action." Fed. R. Evid. 401. If evidence submitted on summary judgement could create a genuine dispute of material fact, it is, by definition, "of consequence in determining the action," and therefore relevant. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021). Evidence of Ney's involvement in the investigation, Ney's shifting narrative of when he made the decision to terminate Merrill along with Stoelk's biased investigation into past allegations create a genuine dispute of material fact of whether a conspiracy existed to terminate Merrill before the investigation even began. Merrill acknowledges Fed. R. Civ. P. 72(a) may preclude a review of the claimed error in the Magistrate Judge's denial of his motion to compel. The ruling, however, was made

26

in the context of summary judgment as a related decision and should be reviewed for an abuse of discretion. *See Sandoval v. County of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021).

CONCLUSION

The District Court's decision to grant Defendants' Motions for Summary Judgment ignores the substantial evidence that significant issues of material fact exist in this case for the fact finder at trial. The District Court agreed with LFA, Ney, and Stoelk's decision to dismiss Merrill's right to a fair and unbiased investigation conducted pursuant to the terms and conditions of his employment contract and the employment policies of his employer. The District Court abused its discretion in denying Merrill's Motion to Compel discovery which resulted in actual and substantial prejudice as allowing the discovery would have precluded summary judgment.

Merrill respectfully requests the Court reverse the District Court's grant of summary judgment in favor of Defendants and remand with an order to compel discovery of those communications relevant to Merrill's claims.

DATED:  June 19, 2023      ERIN E. GOULD, LLC

/s/Erin E. Gould
Erin E. Gould, OSB 103935
erin@eringouldlaw.com
Attorney for Appellant Larry W. Merrill

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-35731

I am the attorney or self-represented party.

**This brief contains** | 6,458 | **words,** including [          ] words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [          ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/Erin E. Gould | **Date** | 06/19/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

CERTIFICATE OF SERVICE

I certify that on June 19, 2023, I served or caused to be served a true copy of APPELLANT'S REPLY BRIEF to the party or attorney for each party as follows:

Ms. Janet M Schroer
Hart Wagner LLP
1000 SW Broadway Ste 2000
Portland OR  97205
Email:  jms@hartwagner.com
      Attorneys for Defendants Ney and Lane Fire Authority

Mr. Jeffrey Hansen
Chock Barhoum
121 SW Morrison Street Suite 415
PORTLAND OR 97204
jeff.hansen@chockbarhoum.com
      Attorney for Defendants Stoelk Investigation and D. Craig Stoelk

✓   by electronic service via the Federal Court's CM/ECF system.

ERIN E. GOULD, LLC

/s/Erin E. Gould
Erin E. Gould,  OSB 103935
Attorney for Appellant Merrill